# LEXECON INC. ET AL. *v.* MILBERG WEISS BERSHAD HYNES & LERACH ET AL.

No. 96–1482.   Argued November 10, 1997—Decided March 3, 1998

Souter, J., delivered the opinion of the Court, which was unanimous except insofar as Scalia, J., did not join Part II–C.

*Michael K. Kellogg* argued the cause for petitioners. With him on the briefs were *Mark C. Hansen, Sean A. Lev,*

*Stephen M. Shapiro, Michele L. Odorizzi,* and *Kenneth S. Geller.*

*Jerold S. Solovy* argued the cause for respondents. With him on the brief for respondents Milberg Weiss Bershad Hynes & Lerach et al. were *Ronald L. Marmer, C. John Koch, Jeffrey T. Shaw, Paul M. Smith, Thomas J. Perrelli, Arthur R. Miller,* and *Michael Meehan.* *Gerald Maltz* filed a brief for respondents Cotchett et al.*

JUSTICE SOUTER delivered the opinion of the Court.†

Title 28 U. S. C. § 1407(a) authorizes the Judicial Panel on Multidistrict Litigation to transfer civil actions with common issues of fact "to any district for coordinated or consolidated pretrial proceedings," but imposes a duty on the Panel to remand any such action to the original district "at or before the conclusion of such pretrial proceedings." *Ibid.* The issue here is whether a district court conducting such "pretrial proceedings" may invoke § 1404(a) to assign a transferred case to itself for trial. We hold it has no such authority.

I

In 1992, petitioners, Lexecon Inc., a law and economics consulting firm, and one of its principals (collectively, Lexecon), brought this diversity action in the Northern District of

---

*Briefs of *amici curiae* urging reversal were filed for the Regents of the University of California by *Shirley M. Hufstedler, Harold J. McElhinny,* and *P. Martin Simpson, Jr.;* and for the Washington Legal Foundation by *Daniel J. Popeo.*

Briefs of *amici curiae* urging affirmance were filed for the Aerospace Industries Association of America, Inc., by *Thomas J. McLaughlin* and *Mac S. Dunaway;* for the American Council of Life Insurance et al. by *Theodore B. Olson, Theodore J. Boutrous, Jr., Phillip E. Stano, Craig Berrington,* and *Phillip Schwartz;* for Eli Lilly and Co. by *Charles E. Lipsey;* for Owens-Illinois, Inc., by *James D. Miller;* and for Credit Suisse First Boston Corp. et al. by *Joseph T. McLaughlin* and *Monroe Sonnenborn.*

†JUSTICE SCALIA joins this opinion, except as to Part II-C.

Illinois against respondents, the law firms of Milberg Weiss Bershad Hynes & Lerach (Milberg) and Cotchett, Illston & Pitre (Cotchett), claiming malicious prosecution, abuse of process, tortious interference, commercial disparagement, and defamation. The suit arose out of the firms' conduct as counsel in a prior class action brought against Charles Keating and the American Continental Corporation for violations of the securities and racketeering laws. Lexecon also was a defendant, charged with giving federal and state banking regulators inaccurate and misleading reports about the financial condition of the American Continental Corporation and its subsidiary Lincoln Savings and Loan. Along with other actions arising out of the failure of Lincoln Savings, the case against Lexecon was transferred under § 1407(a) for pretrial proceedings before Judge Bilby in the District of Arizona, where the matters so consolidated were known as the Lincoln Savings litigation. Before those proceedings were over, the class-action plaintiffs and Lexecon reached what they termed a "resolution," under which the claims against Lexecon were dismissed in August 1992.

Lexecon then filed this case in the Northern District of Illinois charging that the prior class action terminated in its favor when the respondent law firms' clients voluntarily dismissed their claims against Lexecon as meritless, amounting to nothing more, according to Lexecon, than a vendetta. When these allegations came to the attention of Judge Bilby, he issued an order stating his understanding of the terms of the resolution agreement between Lexecon and the class-action plaintiffs. 102 F. 3d 1524, 1529, and n. 2 (CA9 1996). Judge Bilby's characterization of the agreement being markedly at odds with the allegations in the instant action, Lexecon appealed his order to the Ninth Circuit.

Milberg, joined by Cotchett, then filed a motion under § 1407(a) with the Judicial Panel on Multidistrict Litigation seeking transfer of this case to Judge Bilby for consolidation with the Lincoln Savings litigation. Although the judge en-

tered a recusal because of the order he had taken it upon himself to issue, the law firms nonetheless renewed their motion for a § 1407(a) transfer.

The Panel ordered a transfer in early June 1993 and assigned the case to Judge Roll, noting that Lexecon's claims "share questions of fact with an as yet unapproved settlement involving Touche Ross, Lexecon, Inc. and the investor plaintiffs in the Lincoln Savings investor class actions in MDL–834." App. 18. The Panel observed that "i) a massive document depository is located in the District of Arizona and ii) the Ninth Circuit has before it an appeal of an order [describing the terms of Lexecon's dismissal from the Lincoln Savings litigation] in MDL–834 which may be relevant to the *Lexecon* claims." *Ibid.* Prior to any dispositive action on Lexecon's instant claims in the District of Arizona, the Ninth Circuit appeal mentioned by the Panel was dismissed, and the document depository was closed down.

In November 1993, Judge Roll dismissed Lexecon's state-law malicious prosecution and abuse of process claims, applying a "heightened pleading standard," 845 F. Supp. 1377, 1383 (Ariz. 1993). Although the law firms then moved for summary judgment on the claims remaining, the judge deferred action pending completion of discovery, during which time the remaining parties to the Lincoln Savings litigation reached a final settlement, on which judgment was entered in March 1994.

In August 1994, Lexecon moved that the District Court refer the case back to the Panel for remand to the Northern District of Illinois, thus heeding the point of Multidistrict Litigation Rule 14(d), which provides that "[t]he Panel is reluctant to order remand absent a suggestion of remand from the transferee district court." The law firms opposed a remand because discovery was still incomplete and filed a countermotion under § 1404(a) requesting the District of Arizona to "transfer" the case to itself for trial. Judge Roll deferred decision on these motions as well.

In November 1994, Lexecon again asked the District Court to request the Panel to remand the case to the Northern District of Illinois. Again the law firms objected and requested a § 1404 transfer, and Judge Roll deferred ruling once more. On April 24, 1995, however, he granted summary judgment in favor of the law firms on all remaining claims except one in defamation brought against Milberg, and at the same time he dismissed Milberg's counterclaims. 884 F. Supp. 1388, 1397 (Ariz. 1995). Cotchett then made a request for judgment under Federal Rule of Civil Procedure 54(b). Lexecon objected to the exercise of Rule 54(b) discretion, but did not contest the authority of the District Court in Arizona to enter a final judgment in Cotchett's favor. On June 7, 1995, the court granted respondent Cotchett's Rule 54(b) request.

In the meantime, the Arizona court had granted the law firms' § 1404(a) motions to assign the case to itself for trial, and simultaneously had denied Lexecon's motions to request the Panel to remand under § 1407(a). Lexecon sought immediate review of these last two rulings by filing a petition for mandamus in the Ninth Circuit. After argument, a majority of the Circuit panel, over the dissent of Judge Kozinski, denied Lexecon's requests to vacate the self-assignment order and require remand to the Northern District of Illinois. The Circuit so ruled even though the majority was "not prepared to say that [Lexecon's] contentions lack merit" and went so far as to note the conflict between "what appears to be a clear statutory mandate [of § 1407 and § 1404]" and Multidistrict Litigation Rule 14(b), which explicitly authorizes a transferee court to assign an action to itself for trial. *Lexecon* v. *Milberg Weiss*, No. 95–70380 (CA9, July 21, 1995), p. 4. The majority simply left that issue for another day, relying on its assumption that Lexecon would have an opportunity to obtain relief from the transfer order on direct appeal: "[t]he transfer order can be appealed immediately along

with other issues in the event the petitioners lose on the merits [at trial]." *Id.*, at p. 3.

Trial on the surviving defamation claim then went forward in the District of Arizona, ending in judgment for Milberg, from which Lexecon appealed to the Ninth Circuit. It again appealed the denial of its motion for a suggestion that the Panel remand the matter to the Northern District of Illinois, and it challenged the dismissal of its claims for malicious prosecution and abuse of process, and the entry of final judgment in favor of Cotchett. Lexecon took no exception to the Arizona court's jurisdiction (as distinct from venue) and pursued no claim of error in the conduct of the trial.

A divided panel of the Ninth Circuit affirmed, relying on the Panel's Rule 14 and appellate and District Court decisions in support of the District Court's refusal to support remand under § 1407(a) and its decision to assign the case to itself under § 1404(a). 102 F. 3d, at 1532–1535. While the majority indicated that permitting the transferee court to assign a case to itself upon completion of its pretrial work was not only consistent with the statutory language but conducive to efficiency, Judge Kozinski again dissented, relying on the texts of §§ 1407(a) and 1404(a) and a presumption in favor of a plaintiff's choice of forum. We granted certiorari, 520 U. S. 1227 (1997), to decide whether § 1407(a) does permit a transferee court to entertain a § 1404(a) transfer motion to keep the case for trial.

## II

### A

In defending the Ninth Circuit majority, Milberg may claim ostensible support from two quarters. First, the Panel has itself sanctioned such assignments in a rule issued in reliance on its rulemaking authority under 28 U. S. C. § 1407(f). The Panel's Rule 14(b) provides that "[e]ach transferred action that has not been terminated in the transferee district court shall be remanded by the Panel to the

transferor district for trial, unless ordered transferred by the transferee judge to the transferee or other district under 28 U. S. C. § 1404(a) or 28 U. S. C. § 1406." Thus, out of the 39,228 cases transferred under § 1407 and terminated as of September 30, 1995, 279 of the 3,787 ultimately requiring trial were retained by the courts to which the Panel had transferred them. Administrative Office of the United States, L. Mecham, Judicial Business of the United States Courts: 1995 Report of the Director 32. Although the Panel's rule and the practice of self-assignment have not gone without challenge, see, e. g., 15 C. Wright, A. Miller, & E. Cooper, Federal Practice and Procedure § 3866, p. 619 (2d ed. 1986) (hereinafter Wright, Miller, & Cooper); Trangsrud, Joinder Alternatives in Mass Tort Litigation, 70 Cornell L. Rev. 779, 809 (1985); Levy, Complex Multidistrict Litigation and the Federal Courts, 40 Ford. L. Rev. 41, 64–65 (1972), federal courts have treated such transfers with approval, beginning with the Second Circuit's decision in *Pfizer, Inc.* v. *Lord*, 447 F. 2d 122, 124–125 (1971) *(per curiam)* (upholding MDL Rule 15(d), the precursor to Rule 14(b)). See, e. g., *In re Fine Paper Antitrust Litigation*, 685 F. 2d 810, 820, and n. 7 (CA3 1982); *In re Air Crash Disaster at Detroit Metro. Airport*, 737 F. Supp. 391, 393–394 (ED Mich. 1989); *In re Viatron Computer Sys. Corp.*, 86 F. R. D. 431, 432 (Mass. 1980).

The second source of ostensible authority for Milberg's espousal of the self-assignment power here is a portion of text of the multidistrict litigation statute itself:

"When civil actions involving one or more common questions of fact are pending in different districts, such actions may be transferred to any district for coordinated or consolidated pretrial proceedings." 28 U. S. C. § 1407(a).

Although the statute limits a transferee court's authority to the conduct of "coordinated or consolidated" proceedings and

to those that are "pretrial," these limitations alone raise no obvious bar to a transferee's retention of a case under § 1404. If "consolidated" proceedings alone were authorized, there would be an argument that self-assignment of one or some cases out of many was not contemplated, but because the proceedings need only be "coordinated," no such narrow limitation is apparent. While it is certainly true that the instant case was not "consolidated" with any other for the purpose literally of litigating identical issues on common evidence, it is fair to say that proceedings to resolve pretrial matters were "coordinated" with the conduct of earlier cases sharing the common core of the Lincoln Savings debacle, if only by being brought before judges in a district where much of the evidence was to be found and overlapping issues had been considered. Judge Bilby's recusal following his decision to respond to Lexecon's Illinois pleadings may have limited the prospects for coordination, but it surely did not eliminate them. Hence, the requirement that a transferee court conduct "coordinated or consolidated" proceedings did not preclude the transferee Arizona court from ruling on a motion (like the § 1404 request) that affects only one of the cases before it.

Likewise, at first blush, the statutory limitation to "pretrial" proceedings suggests no reason that a § 1407 transferor court could not entertain a § 1404(a) motion. Section 1404(a) authorizes a district court to transfer a case in the interest of justice and for the convenience of the parties and witnesses. See § 1404(a). Such transfer requests are typically resolved prior to discovery, see Wright, Miller, & Cooper § 3866, at 620, and thus are classic "pretrial" motions.

Beyond this point, however, the textual pointers reverse direction, for § 1407 not only authorizes the Panel to transfer for coordinated or consolidated pretrial proceedings, but obligates the Panel to remand any pending case to its originating court when, at the latest, those pretrial proceedings have run their course.

"Each action so transferred shall be remanded by the panel at or before the conclusion of such pretrial proceedings to the district from which it was transferred unless it shall have been previously terminated." § 1407(a) (proviso without application here omitted).

The Panel's instruction comes in terms of the mandatory "shall," which normally creates an obligation impervious to judicial discretion. *Anderson* v. *Yungkau,* 329 U. S. 482, 485 (1947). In the absence of any indication that there might be circumstances in which a transferred case would be neither "terminated" nor subject to the remand obligation, then, the statutory instruction stands flatly at odds with reading the phrase "coordinated or consolidated pretrial proceedings" so broadly as to reach its literal limits, allowing a transferee court's self-assignment to trump the provision imposing the Panel's remand duty. If we do our job of reading the statute whole, we have to give effect to this plain command, see *Estate of Cowart* v. *Nicklos Drilling Co.,* 505 U. S. 469, 476 (1992), even if doing that will reverse the longstanding practice under the statute and the rule, see *Metropolitan Stevedore Co.* v. *Rambo,* 515 U. S. 291, 300 (1995) ("'Age is no antidote to clear inconsistency with a statute'" (quoting *Brown* v. *Gardner,* 513 U. S. 115, 122 (1994))).

As the Ninth Circuit panel majority saw it, however, the inconsistency between an expansive view of "coordinated or consolidated pretrial" proceedings and the uncompromising terms of the Panel's remand obligation disappeared as merely an apparent conflict, not a real one. The "focus" of § 1407 was said to be constituting the Panel and defining its authority, not circumscribing the powers of district courts under § 1404(a). 102 F. 3d, at 1533. Milberg presses this point in observing that § 1407(a) does not, indeed, even apply to transferee courts, being concerned solely with the Panel's duties, whereas § 1407(b), addressed to the transferee courts, says nothing about the Panel's obligation to remand. But this analysis fails to persuade, for the very reason that it

rejects that central tenet of interpretation, that a statute is to be considered in all its parts when construing any one of them. To emphasize that § 1407(b) says nothing about the Panel's obligation when addressing a transferee court's powers is simply to ignore the necessary consequence of self-assignment by a transferee court: it conclusively thwarts the Panel's capacity to obey the unconditional command of § 1407(a).

A like use of blinders underlies the Circuit majority's conclusion that the Panel was not even authorized to remand the case under its Rule 14(c), the terms of which condition the remand responsibility on a suggestion of the transferee court, a motion filed directly with the Panel, or the Panel's *sua sponte* decision to remand. None of these conditions was fulfilled, according to the Court of Appeals, which particularly faulted Lexecon for failing to file a remand motion directly with the Panel, as distinct from the transferee court.[1] This analysis, too, is unpersuasive; it just ignores the fact that the statute places an obligation on the Panel to

---

[1] The Ninth Circuit stopped short of expressly inferring a waiver from Lexecon's failure to file a motion for remand directly with the Panel, and any inference of waiver would surely have been unsound. Although the Panel's Rule 14(c)(i) does authorize a party to file such a motion, Rule 14(d) comes close to saying that only under extraordinary circumstances will such a motion be granted without a suggestion of remand by the transferee court. (The Rule reads: "The Panel is reluctant to order remand absent a suggestion of remand from the transferee district court.") Therefore, even if a party may waive the § 1407 remand requirement by failing to request remand from the transferor court, see 28 U. S. C. § 1406(b), Rule 14(d) precludes an inference of waiver from mere failure to request remand from the Panel.

In this case, moreover, one can say categorically that a motion before the Panel would have failed; the transferee court denied Lexecon's motion for a remand suggestion simultaneously with an order assigning the case to itself for trial, thus exercising the authority that the Panel's Rule 14(b) expressly purported to recognize. Under the Panel's own rules, in sum, Lexecon never had a chance to waive a thing.

remand no later than the conclusion of pretrial proceedings in the transferee court, and no exercise in rulemaking can read that obligation out of the statute. See 28 U. S. C. § 1407(f) (express requirement that rules be consistent with statute).

B

Milberg proffers two further arguments for overlooking the tension between a broad reading of a court's pretrial authority and the Panel's remand obligation. First, it relies on a subtle reading of the provision of § 1407(a) limiting the Panel's remand obligation to cases not "previously terminated" during the pretrial period. To be sure, this exception to the Panel's remand obligation indicates that the Panel is not meant to issue ceremonial remand orders in cases already concluded by summary judgment, say, or dismissal. But according to Milberg, the imperative to remand is also inapplicable to cases self-assigned under § 1404, because the self-assignment "terminates" the case insofar as its venue depends on § 1407. When the § 1407 character of the action disappears, Milberg argues, the strictures of § 1407 fall away as well, relieving the Panel of any further duty in the case. The trouble with this creative argument, though, is that the statute manifests no such subtlety. Section 1407(a) speaks not in terms of imbuing transferred actions with some new and distinctive venue character, but simply in terms of "civil actions" or "actions." It says that such an action, not its acquired personality, must be terminated before the Panel is excused from ordering remand. The language is straightforward, and with a straightforward application ready to hand, statutory interpretation has no business getting metaphysical.

Second, Milberg tries to draw an inference in its favor from the one subsection of § 1407 that does authorize the Panel to transfer a case for trial as well as pretrial proceedings. Subsection (h) provides that,

> "[n]otwithstanding the provisions of section 1404 or subsection (f) of this section, the judicial panel on multidistrict litigation may consolidate and transfer with or without the consent of the parties, for both pretrial purposes and for trial, any action brought under section 4C of the Clayton Act."

Milberg fastens on the introductory language explicitly overriding the "provisions of section 1404 or subsection (f)," which would otherwise, respectively, limit a district court to transferring a case "to any other district or division where it might have been brought," § 1404(a), and limit the Panel to prescribing rules "not inconsistent with Acts of Congress," § 1407(f). On Milberg's reasoning, these overrides are required because the cited provisions would otherwise conflict with the remainder of subsection (h) authorizing the Panel to order trial of certain Clayton Act cases in the transferee court. The argument then runs that since there is no override of subsection (a) of § 1407, subsection (a) must be consistent with a transfer for trial as well as pretrial matters. This reasoning is fallacious, however. Subsections (a) and (h) are independent sources of transfer authority in the Panel; each is apparently written to stand on its own feet. Subsection (h) need not exclude the application of subsection (a), because nothing in (a) would by its terms limit any provision of (h).

Subsection (h) is not merely valueless to Milberg, however; it is ammunition for Lexecon. For the one point that subsection (h) does demonstrate is that Congress knew how to distinguish between trial assignments and pretrial proceedings in cases subject to § 1407. Although the enactment of subsection (a), Act of Apr. 29, 1968, 82 Stat. 109, preceded the enactment of subsection (h), Act of Sept. 30, 1976, § 303, 90 Stat. 1394, 1396, the fact that the later section distinguishes trial assignments from pretrial proceedings generally is certainly some confirmation for our conclusion, on independent grounds, that the subjects of pretrial

proceedings in subsections (a) and (b) do not include self-assignment orders.[2]

## C

There is, finally, nothing left of Milberg's position beyond an appeal to legislative history, some of which turns out to ignore the question before us, and some of which may support Lexecon. Milberg cites a House Report on the bill that became § 1407, which addresses the question of trial transfer in multidistrict litigation cases by saying that, "[o]f course, 28 U. S. C. 1404, providing for changes of venue generally, is available in those instances where transfer of a case for all purposes is desirable." H. R. Rep. No. 1130, 90th Cong., 2d Sess., p. 4 (1968) (hereinafter H. R. Rep.), cited in Brief for Respondents Milberg et al. 25. But the question is not whether a change of venue may be ordered in a case consolidated under § 1407(a); on any view of § 1407(a), if an order may be made under § 1404(a),[3] it may be made after remand of the case to the originating district court. The relevant question for our purposes is whether a transferee court, and not a transferor court, may grant such a motion, and on this point, the language cited by Milberg provides no guidance.

If it has anything to say to us here, the legislative history tends to confirm that self-assignment is beyond the scope of the transferee court's authority. The same House Report that spoke of the continued vitality of § 1404 in § 1407 cases also said this:

---

[2] It is well to note the limitations of a related argument. It may be tempting to say that the incompatibility of a self-assignment under § 1404(a) with the Panel's mandate is confirmed by the authority of a transferor court to assign a case to a § 1407(a) transferee district for trial if that would be appropriate following pretrial proceedings under § 1407(a). But there is one circumstance in which a transferor court would be unable to do that. As noted, transfers under § 1407 are not limited by general venue statutes; those under § 1404 are.

[3] See n. 2, *supra.*

40

"The proposed statute affects only the pretrial stages in multidistrict litigation. It would not affect the place of trial in any case or exclude the possibility of transfer under other Federal statutes.

.         .         .         .         .

"The subsection requires that transferred cases be remanded to the originating district at the close of coordinated pretrial proceedings. The bill does not, therefore, include the trial of cases in the consolidated proceedings." H. R. Rep., at 3–4.

The comments of the bill's sponsors further suggest that application of § 1407 (before the addition of subsection (h)) would not affect the place of trial. See, e. g., Multidistrict Litigation: Hearings on S. 3815 and S. 159 before the Subcommittee on Improvements in Judicial Machinery of the Senate Comm. on the Judiciary, 90th Cong., 1st Sess., pt. 2, p. 110 (1967) (Sen. Tydings) ("[W]hen the deposition and discovery is completed, then the original litigation is remanded to the transferor district for the trial"). Both the House and the Senate Reports stated that Congress would have to amend the statute if it determined that multidistrict litigation cases should be consolidated for trial. S. Rep. No. 454, 90th Cong., 1st Sess., p. 5 (1967).

D

In sum, none of the arguments raised can unsettle the straightforward language imposing the Panel's responsibility to remand, which bars recognizing any self-assignment power in a transferee court and consequently entails the invalidity of the Panel's Rule 14(b). See 28 U. S. C. § 1407(f). Milberg may or may not be correct that permitting transferee courts to make self-assignments would be more desirable than preserving a plaintiff's choice of venue (to the degree that § 1407(a) does so), but the proper venue for resolving that issue remains the floor of Congress. See *Am-*

*chem Products, Inc.* v. *Windsor*, 521 U. S. 591, 628–629 (1997); *Finley* v. *United States*, 490 U. S. 545, 556 (1989).[4]

### III

The remaining question goes to the remedy, which Milberg argues may be omitted under the harmless-error doctrine. Milberg posits a distinction between a first category of cases erroneously litigated in a district in which (absent waiver) venue may never be laid under the governing statute, see *Olberding* v. *Illinois Central R. Co.*, 346 U. S. 338, 340 (1953), and a second category, in which the plaintiff might originally have chosen to litigate in the trial forum to which it was unwillingly and erroneously carried, as by a transfer under § 1404. In the first, reversal is necessary; in the second, affirmance is possible if no independent and substantial right was violated in a trial whose venue was determined by a discretionary decision. Since Lexecon could have brought suit in the Arizona district consistently with the general venue requirements of 28 U. S. C. § 1391, and since the transfer for trial was made on the authority of § 1404(a), Milberg argues, this case falls within the second category and should escape reversal because none of Lexecon's substantial rights was prejudicially affected, see § 2111. Assuming the distinction may be drawn, however, we think this case bears closer analogy to those in the first category, in which reversal with new trial is required because venue is precluded by the governing statute.

Milberg's argument assumes the only kind of statute entitled to respect in accordance with its uncompromising terms is a statute that categorically limits a plaintiff's initial choice of forum. But there is no apparent reason why courts

---

[4] Because we find that the statutory language of § 1407 precludes a transferee court from granting any § 1404(a) motion, we have no need to address the question whether § 1404(a) permits self-transfer given that the statute explicitly provides for transfer only "to any other district." 28 U. S. C. § 1404(a).

should not be equally bound by a venue statute that just as categorically limits the authority of courts (and special panels) to override a plaintiff's choice. If the former statute creates interests too substantial to be denied without a remedy, the latter statute ought to be recognized as creating interests equally substantial. In each instance the substantiality of the protected interest is attested by a congressional judgment that in the circumstances described in the statute no discretion is to be left to a court faced with an objection to a statutory violation. To render relief discretionary in either instance would be to allow uncorrected defiance of a categorical congressional judgment to become its own justification. Accordingly, just as we agree with Milberg that the strict limitation on venue under, say, §1391(a) (diversity action "may . . . be brought only . . .") is sufficient to establish the substantial character of any violation, Brief for Respondents Milberg et al. 43 (citing *Olberding, supra*), the equally strict remand requirement contained in §1407 should suffice to establish the substantial significance of any denial of a plaintiff's right to a remand once the pretrial stage has been completed.

Nor is Milberg correct that our recent decision in *Caterpillar Inc.* v. *Lewis*, 519 U. S. 61 (1996), is to the contrary.[5] In

---

[5] In its brief to this Court, Milberg suggests that any decision rejecting multidistrict litigation courts' practice of ruling on §1404 transfer motions should be applied only prospectively under *Chevron Oil Co.* v. *Huson*, 404 U. S. 97, 106–107 (1971). Because this argument was not presented below, see Brief for Milberg Defendants in No. 95–16403 et al. (CA9), or to this Court when Milberg opposed petitioners' petition for certiorari, see Brief in Opposition for Respondents Milberg et al., it is unnecessary for us to consider it here.

Milberg's brief also argues that petitioners are not entitled to relief because the only claim that survived for trial should have been dismissed during pretrial proceedings. We do not address the propriety of the District Court's decision to allow this claim to go forward; the issue falls outside the question on which we granted certiorari. See this Court's Rule 14.1(a) ("Only the questions set forth in the petition, or fairly included therein, will be considered by the Court").

that case, which got no new trial, the jurisdictional defect (a lack of complete diversity) had been cured by subsequent events. While the statutory error (failure to comply with the § 1441(a) requirement that the case be fit for federal adjudication when the removal petition is filed) "remained in the unerasable history of the case," *id.*, at 73, in the sense that it had not been cured within the statutory period, it had otherwise been cured by the time judgment was entered. The instant case is different from that one, inasmuch as there was no continuing defiance of the congressional condition in *Caterpillar*, but merely an untimely compliance. It was on this understanding that we held that considerations of "finality, efficiency, and economy" trumped the error, *id.*, at 75. After *Caterpillar*, therefore, since removal is permissible only where original jurisdiction exists at the time of removal or at the time of the entry of final judgment, the condition contained in the removal statute retains significance. But the § 1407(a) mandate would lose all meaning if a party who continuously objected to an uncorrected categorical violation of the mandate could obtain no relief at the end of the day.[6]

Accordingly, the judgment of the Court of Appeals is reversed, and the case is remanded for further proceedings consistent with this opinion.

*So ordered.*

---

[6] Although Cotchett's request for an order of dismissal under Rule 54(b) was not granted until after the Arizona court had assigned the case to itself for trial, there is no reason to reconsider that dismissal order. It was perfectly proper as a pretrial order and, for that matter, was merely the formal reflection of the Arizona court's decision on the merits of the claims that had been resolved prior to that court's decision on the § 1404 transfer.