141 F.Supp.2d 951 (2001)
In re COMDISCO SECURITIES LITIGATION
Michael Blitzer, etc., et al., Plaintiffs,
v.
Comdisco, Inc., et al., Defendants.
Nos. 01 C 2110, 01 C 874.
United States District Court, N.D. Illinois, Eastern Division.
April 12, 2001.
*952 Marvin A. Miller, Miller Faucher and Cafferty LLP, Chicago, IL, for Gail Fialkow.
Marvin A. Miller, Miller Faucher and Cafferty LLP, Chicago, Melvyn I. Weiss, Steven G. Schulman, Sandra Stein, Samuel H. Rudman, Milberg Weiss Bershad Hynes & Lerach LLP, New York, NY, for Commonwealth of Pennsylvania State Employees' Retirement System.
Myron M. Cherry, Myron M. Cherry & Associates LLC, Chicago, IL, Howard Coates, Jack Reise, Cauley Geller Bowman & Coates LLP, Boca Raton, FL, for Alan Gordon.
Patrick V. Dahlstrom, Pomerantz Haudek Block Grossman & Gross LLP, Chicago, IL, Stanley M. Grossman, Marc. I. Gross, Pomerantz Haudek Block Grossman & Gross LLP, New York, NY, for Joseph D. Lyng and Gregory W. Davidovich.
Mary Jane Fait, Adam J. Levitt, Wolf Haldenstein Adler Freeman & Herz LLC, Chicago, IL, Marc S. Henzel, Law Offices of Marc S. Henzel, Philadelphia, PA, Charles J. Piven, Law Offices of Charles J. Piven, P.A., Baltimore, MD, for Peter Moser.
Alan N. Salpeter, Michele Odorizzi, Javier H. Rubinstein, Linda T. Coberly, Mayer Brown & Platt, Chicago, IL, for Defendant.

MEMORANDUM
SHADUR, Senior District Judge.
This Court has received several motions for appointment to serve as lead plaintiff or plaintiffs in these actions as provided for by 15 U.S.C. § 78u-4(a)(3)(B).[1] Based on the movants' respective representations, it would appear that the Commonwealth of Pennsylvania State Employees' Retirement Systems ("PASERS," treated as a singular noun here) is the presumptive lead plaintiff by a wide margin: Its Ex. B Sch. A to its supporting Memorandum of Law shows that it purchased about 250,000 shares of Comdisco, Inc. common stock during the proposed Class Period described in the Complaint and that it claims losses of some $2.4 million.
As this Court has previously pointed out in its In re Bank One Shareholders Class Actions opinion reported at 96 F.Supp.2d 780 (N.D.Ill.2000), the statute is careful to state the lead plaintiff decision (the identification of the "most adequate plaintiff") only in presumptive terms  and not as a conclusive presumption. And in that respect the determination of what is best for the plaintiff class as a whole, and not just what the largest class claimant may prefer, is by definition a function of the maximum class benefit that may come from any recovery by way of settlement or trial. In turn, that optimum class benefit is directly related to how much of any gross recovery obtained from defendants must go to lawyers' *953 fees, rather than into the pockets of the class members. In that regard there is no need to reinvent the wheel, for Bank One, id. at 784 has stated what continues to represent this Court's perspective:
Although the members of the Pension Group are thus entitled to presumptive status under Subsection (a)(3)(B) as the most adequate plaintiffs, a simple example  though framed for illustrative purposes to present a substantial contrast  will demonstrate why that rebuttable presumption does not necessarily control. Suppose for instance a plaintiff in such a presumptive status has agreed that its own lawyers, if acting as class counsel, are to receive one-third of any class recovery. Suppose further that another highly reputable law firm that has appeared of record for another putative plaintiff or plaintiffs, having demonstrated excellent credentials in earlier securities class action litigation and being clearly capable of handling the complexities of the current lawsuit, is willing to handle the case for half of that percentage fee  or to provide even a greater contrast, is willing to work for that lesser percentage and also to impose a cap on the firm's total fee payment. In that circumstance the presumptive lead plaintiff could certainly bind itself contractually to pay one-third of its share of the class recovery to its own lawyer, but any court would be remiss if it were to foist that one-third contingency arrangement on all of the other class members who had not themselves chosen that law firm to be their advocate.
To this Court that would signal the adoption of one of two alternatives. It should be remembered that although Subsection (a)(3)(B)(v) provides that the most adequate plaintiffs may "select and retain counsel to represent the class," that opportunity is expressly made "subject to the approval of the court." In this Court's view, if the presumptive lead plaintiffs were to insist on their class counsel handling the action on the hypothesized materially less favorable contractual basis, that insistence would effectively rebut the presumption that the putative class representatives, despite the amounts that they have at stake personally, were indeed the "most adequate plaintiffs"  that is, the class members "most capable of adequately representing the interests of class members" (Subsection (a)(3)(B)(i)). If on the other hand the presumptive class representative were willing to be represented by the most favorable qualified bidder among the lawyers submitting bids, with that bidder either supplanting the presumptive lead plaintiff's original choice of counsel or working together with that original counsel (but with the total lawyers' fees to be circumscribed by the low bidder's proposal), the presumption would clearly remain unrebutted and the presumptive most adequate plaintiffs would properly be appointed as lead plaintiffs.
It is because this Court continues to believe that competitive bidding among highly qualified and well-credentialed plaintiffs class action counsel should be considered as a potential vehicle for awarding the class' legal representation that the attached April 6 memorandum order has been entered. In that light the PASERS motion contains a materially disturbing note  not in the motion or in the accompanying Memorandum of Law as such but in the attached forwarding letter from one of the law firms that have tendered PASERS' papers. What is troublesome is the conclusion of that letter received from Milberg Weiss Bershad Hynes & Lerach LLP:
PASERS has further instructed us to inform your Honor that should it be *954 appointed Lead Plaintiff it will select Milberg Weiss Bershad Hynes & Lerach LLP to serve as Lead Counsel and will not agree to be represented by any other law firm. PASERS has determined that its interests and those of the Class would best be served by the appointment of Milberg Weiss Bershad Hynes & Lerach LLP as Lead Counsel; and that the award of fees should take place at the end of the proceeding when the Court can assess all of the relevant factors properly considered for that purpose.
There is of course no question as to the substantial experience of the Milberg Weiss firm in plaintiff class action practice  indeed, it is perhaps the best known of the many firms that engage in that area of the law. And that was no doubt true even before the law firm's involvement in its high-profile dispute with Lexecon, Inc. and Dan Fischel, which spawned a Supreme Court opinion (Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998)) and ultimately a huge judgment against the law firm  ultimately settled, if this Court's recollection is correct, by a $55 million payment between the time of the jury verdict on compensatory damages and the commencement of the trial phase to address punitive damages. But as sold as PASERS may be on Milberg Weiss to serve as its lawyers (although that statement comes from Milberg Weiss itself rather than the client, this Court does not question that representation), neither PASERS nor Milberg Weiss is entitled to impose on all other members of the class  for whom both of them would be fiduciaries if they were to become the class representative and class counsel  more onerous terms than the class would have to bear with other responsible legal representation.
It would of course be premature for this Court to express any ultimate view on how the bidding process will unfold (or indeed on whether bidding will in fact be the basis for awarding the plaintiff class' legal representation in this litigation). But given the substance and tenor of the Milberg Weiss letter, this Court believes that it is important to confirm now that it is not about to accept an ultimatum, either from Milberg Weiss or from PASERS, that Milberg Weiss must represent the class by reason of PASERS' presumptive status as lead plaintiff or that the setting of a fee for class counsel must necessarily be deferred to the end of the case without the initial establishment of a formulation for such fees.
In order that there be no misunderstanding in either of those respects, Milberg Weiss is directed to transmit a copy of this memorandum to its principals  the entire set of decisionmakers for PASERS. And as contemplated by the attached April 6 memorandum order, this Court awaits the filings by any bidders or other interested parties not submitting a bid.

MEMORANDUM ORDER
In further implementation of this Court's March 26, 2001 memorandum order ("March 26 Order"), and in conjunction with this Court's anticipated determination of the "most adequate plaintiff" (see 15 U.S.C. § 78u-4(a)(3)(B)[1]) to represent the putative plaintiff class in these actions, all attorneys of record in these actions, and any other attorneys who have timely filed motions under Subsection (a)(3)(B) for any member of the putative class to serve as lead plaintiff, are authorized to file in this *955 Court's chambers, on or before May 4, 2001, sealed bids as to the fee arrangements under which they will be prepared to represent the plaintiff class in all actions other than Case No. 01 C 1177 if they are hereafter appointed to serve as class counsel or as co-class counsel in this entire class action litigation except for Case No. 01 C 1177 (if co-class counsel were to be appointed, each such bid must represent the total fees that would be contemplated to be paid to all co-counsel including the bidder).[2] Each such bid shall be accompanied by a comprehensive curriculum vitae regarding the bidding lawyers or law firm or firms, including appropriate information as to their prior class action experience.
Although this memorandum order has thus established a bidding procedure, it should be understood that this Court has not reached a firm conclusion as to whether the class counsel will be selected on the basis of such bidding. Accordingly, as was provided in this Court's In re Amino Acid Lysine Antitrust Litigation opinion (reported at 918 F.Supp. 1190, 1192 (N.D.Ill. 1996)), any bidder or any interested party not submitting a bid may include or make a written submission on or before May 4, 2001 as to the asserted desirability or undesirability of employing the bidding procedure rather than some other approach to the appointment and compensation of class counsel. In that regard this Court is well aware of, and will take into account, the In re Cendant Corp. PRIDES Litig., No. 99-5555, 2001 WL 276677 opinion issued on March 21, 2001 by the Court of Appeals for the Third Circuit (the same court that now has a Task Force study under way to address that subject). In all other respects the bidding procedure will follow the principles set forth in the Lysine opinion and in the March 26 Order.[3]
As it has done in the Bank One Securities Litigation, this Court contemplates the possible utilization of the bidding procedure as an adjunct to its determination of the "most adequate plaintiff." That latter determination will be made as soon as is practicable, whether or not the legal representation of the plaintiff class is awarded on the basis of bids. If the award is not made on that basis, each bid will be returned to the bidder or bidders involved without disclosure to the other bidders or to the clients represented by such bidders.

*956 Attachment

*957 
NOTES
[1] Each future reference to any subpart of 15 U.S.C. § 78u-4 will omit that portion of the statutory designation, reading simply "Subsection."
[1] Each future reference to any subpart of 15 U.S.C. § 78u-4 will omit that portion of the statutory designation, reading simply "Subsection."
[2] In part the procedure established here is intended to anticipate the possibility that the lowest responsible bidder among the lawyers or law firms electing to bid may prove to be other than the lawyers or law firm or firms who or that already represent the person or group of persons that would otherwise appear to qualify as the "most adequate plaintiff" within the meaning of Subsection (a)(3)(B).
[3] As was true in this Court's handling of the In re Bank One Securities Litigation, 00 C 880, this Court will not entertain any proposal by a prospective class plaintiff for a right to match the most favorable attorneys' fee bid if this Court elects to employ a bidding procedure.