KING, Circuit Judge,
dissenting:
Stripped to its essence, the question before us is not whether a party may defeat a motion for Rule 11 sanctions by complaining it has received insufficient notice of the proceeding against it, and therefore no meaningful opportunity to cure the alleged defect in its submission to the court. The language of the Rule is plain, and the majority does not contend otherwise: “A motion for sanctions under this rule ... shall not he filed with or presented to the court unless, within 21 days after service of the motion ... the challenged paper, claim, defense, contention, allegation, or denial is not withdrawn or appropriately corrected.” Fed.R.Civ.P. 11(c)(1)(A) (emphasis added).
Rather, the question is whether any action (or inaction) on the part of the party against whom sanctions are sought can somehow justify disregarding Rule ll’s mandatory “safe harbor” provision, thereby vitiating the institutional protections it affords. In this case, the majority penalizes a hapless plaintiff for invoking the Rule only belatedly. As a result, the defendants’ counsel- — -who was at least as much responsible for protracting the unfortunate proceedings below — not only escapes sanction for his lack of diligence, but delivers his clients a windfall. Because I cannot subscribe to the “ignore it and hope it goes away” approach advocated by the defendants and adopted by the majority, I am constrained to dissent.
I.
It is, admittedly, difficult to marshal a meaningful response to the majority’s implacable decree that the elementary command “shall not” means something other than what it manifestly says. How should one acknowledge the dawning reality that “[r]ed is grey and yellow white?”[1] I have no facile answer.
It is not as if others have paved the way gradually for the majority’s frolic into Wonderland.[2] Up to now, every court that has addressed the safe harbor provision has, in no uncertain terms, confirmed its gatekeeping aspect. See Ridder v. City of Springfield, 109 F.3d 288, 290 (6th *255 Cir.1997) (Rule 11 sanctions imposed against plaintiffs counsel disallowed for city’s failure to comply with the safe harbor’s “explicit procedural requisite”); Elliott v. Tilton, 64 F.3d 213, 216 (5th Cir. 1995) (plaintiffs’ non-compliance with “procedural prerequisite” of safe harbor provision required reversal of fees assessed by district court against defense counsel pursuant to Rule 11); Hadges v. Yonkers Racing Corp., 48 F.3d 1320, 1328 (2d Cir. 1995) (sanctions under Rule 11 improperly imposed on plaintiff and his counsel where “specific mandate” of safe harbor provision ignored).[3]
Nor could the majority have taken its cue from a higher authority. As the Supreme Court has noted time and again, “[t]he word ‘shall’ is ordinarily ‘the language of command.’ ” Alabama v. Bozeman, 533 U.S. 146, 121 S.Ct. 2079, 2085, 150 L.Ed.2d 188 (2001) (citing Anderson v. Yungkau, 329 U.S. 482, 485, 67 S.Ct. 428, 91 L.Ed. 436 (1947) (quoting Escoe v. Zerbst, 295 U.S. 490, 493, 55 S.Ct. 818, 79 L.Ed. 1566 (1935))). In Lexecon, Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998), the Court observed that “the mandatory[1] shall’ ... normally creates an obligation impervious to judicial discretion.” Id. at 35, 118 S.Ct. 956 (citing Anderson ).[4]
The majority nonetheless imagines a hairline fracture in that otherwise im *256 permeable shield, see ante at 251, distinguishing a rule that is “mandatory” from one that is “jurisdictional” (the latter, one might surmise, means “really” mandatory). Hence, time limits for appeals must be observed, but time limits for claims need not; jurisdiction over the person can be waived, but jurisdiction over the subject matter cannot. Ante at 252-53 & n. 2. The safe harbor provision of Rule 11 is, according to the majority, more like statutes of limitations and personal jurisdiction, and less similar to appeal deadlines and subject matter jurisdiction.
Although the majority correctly recites the black-letter law, it mis-perceives the method behind the seeming madness. An untimely claim may or may not be stricken, it is true, but a court cannot rule either way until suit is filed. A party (or an entire action) might be dismissed for lack of jurisdiction, but, absent a lawsuit, we may only hypothesize. The point is that nothing prevents a party from filing an otherwise valid complaint with stale claims, or against persons outside the court’s reach, or even in the wrong court. In each ease, the district court is authorized to determine its own jurisdiction, rendering any facts relevant to the question appropriate for judicial consideration.
By contrast, in accordance with the plain language of Rule 11, a motion for sanctions cannot be properly filed or presented to the court — period—unless the movant has complied with the safe harbor provision. This is not to say that such motions are not, in actuality, physically filed or presented; they obviously are. The court, however, has no initial authority to rule upon the merits of the motion, or to consider any collateral fact (such as waiver) ostensibly bearing on the propriety of its filing, apart from ascertaining whether the safe harbor provision (or another of Rule 11 s procedural requisites) has been ignored. If the answer to this inquiry is in the affirmative, the motion’s filing is, in effect, a nullity.
In this sense, the safe harbor provision is much like the “mandatory and jurisdictional” time limits imposed on the filing of appeals by Rule 4 of the Federal Rules of Appellate Procedure. See Panhorst v. United States, 241 F.3d 367, 369-70 (4th Cir.2001) (quoting Browder v. Dir., Dep’t of Connections, 434 U.S. 257, 264, 98 S.Ct. 556, 54 L.Ed.2d 521 (1978)). Except as specifically provided by Rule 4, these time limits cannot be expanded, equitably or otherwise. See id. at 370 (district courts possess “no authority to extend the filing period”). The majority distinguishes the safe harbor provision from Rule 4, ante at 252-53, based on its view that no court has specifically invoked the mantra “jurisdictional” in connection with the former.
I am not persuaded. In Ridder, the Sixth Circuit noted the presiding magistrate judge’s observation, inter alia, that the safe harbor “requirement does not appear to be jurisdictional.” 109 F.3d at 292. The Ridder court took no specific issue with this statement, contained as it was within a larger excerpt, but we may reasonably assume that its accuracy was called into serious question by the very fact of reversal. And there is little doubt in my mind that had the question been framed in jurisdictional terms, the Sixth Circuit — and every other court that has addressed the issue — would hold that no jurisdiction exists to entertain a motion for Rule 11 sanctions absent compliance with the safe harbor provision. The majority’s decision therefore creates a split in authority with at least five other circuits and a *257 host of district courts. See supra note 3 and accompanying text.
II.
I understand and share the majority’s consternation with a plaintiff who would file a complaint with scant basis in law or fact, seeking to recover “an infinite amount of money.” But Rector does not deserve to stand alone against the full force of the majority’s wrath. Had counsel for the defendants actually served Rector with the motion for Rule 11 sanctions — as he erroneously certified to the court that he had— Rector might have withdrawn his complaint, thus avoiding the entire mess.
Consider just a partial list of what occurred in this case after June 11, 1999, the date on which Rector was, according to the erroneous Certificate of Service accompanying the motion, purportedly made aware that the defendants were seeking expenses and attorneys’ fees pursuant to Rule 11:
• July 2, 1999 — Court hearing on Rector’s motion to bifurcate and defer RICO pleading issues
• July 22, 1999 — Court hearing on defendants’ motion to dismiss
• July 23, 1999 — Complaint dismissed
• August 6, 1999 — Amended Complaint filed
• September 17, 1999 — Following court hearing, Amended Complaint dismissed
• September 27, 1999 — Motion for sanctions filed
• October 22, 1999 — Court hearing on motion for sanctions
• January 14, 2000 — Motion granted and sanctions awarded
• January 21, 2000 — Notice of appeal filed
• September 14, 2000 — Our opinion issues, vacating award of sanctions and remanding cause
• October 10, 2000 — Judgment on appeal received in district court
• December 15, 2000 — Court hearing on renewed motion for sanctions
• January 4, 2001 — Sanctions again awarded
• January 29, 2001 — Notice of Appeal filed
• June 6, 2001 — Oral argument heard
J.A. 6-10B.
Of course, most of the above proceedings entañed complex written submissions from the parties, obliging the court to read and contemplate each one. In light of all this, the majority’s assertion that the safe harbor provision may be waived because it primarily “protects litigants,” with less regard for institutional interests, see ante at 253 n. 2, is baffling. Rule 11 could and should have fulfilled its overriding institutional purpose in this case by conserving the valuable time and resources of two federal courts. It did not, in fact, serve its intended purpose here, but that was through no fault of Rector.[5]
*258 III.
No award pursuant to Rule 11 ought to be made to the defendants in this case, because their counsel failed to comply with the Rule’s safe harbor provision prior to filing the motion for sanctions. The majority, unwilling to adhere to the firmly established concept that “no” means “no,” holds to the contrary.
I respectfully dissent.

. “But we decide which is right. And which is an illusion.” Graeme Edge, The Day Begins/Late Lament, from the Moody Blues’ recording Days of Future Passed (Deram Records 1967).

. I do not intend my glib hyperbole to convey the impression that my fine colleagues in the majority — for whom I have profound respect and admiration — have given this case anything less than their most thoughtful and serious consideration. The majority’s disregard of the prohibition “shall not,” however, brings to mind a famous encounter between a *255 little girl and a certain ovoid character (reputed to be prone to clumsiness):
"When I use a word,” Humpty Dumpty said in rather a scornful tone, "it means just what I choose it to mean — neither more nor less.”
"The question is,” said Alice, "whether you can make words mean so many different things.”
"The question is,” said Humpty Dumpty, "which is to be master — that’s all.”
Lewis Carroll, Through the Looking-Glass and What Alice Found There 123 (The Mac-Millan Co. 1899) (1862).

. Accord Barber v. Miller, 146 F.3d 707, 710 (9th Cir. 1998) (citing Elliott and Hadges in reversing Rule 11 award against plaintiffs counsel where defendant failed to comply with safe harbor provision, noting that "[a]n award of sanctions cannot be upheld under those circumstances”); AeroTech, Inc. v. Estes, 110 F.3d 1523, 1528-29 (10th Cir.1997) (citing Elliott and affirming magistrate judge's refusal to award fees to defendant “because the record failed to establish compliance with Rule ll's cure provision,” id. at 1529); cf. Divane v. Krull Elec. Co., Inc., 200 F.3d 1020, 1026 (7th Cir.1999) (citing Ridder and Barber for the proposition that safe harbor provision "is not merely an empty formality").
The impressive array of circuit authority cited above has, cumulatively, been followed dozens of times by the lower courts within those jurisdictions. District courts in other circuits, unconstrained by binding precedent, have nonetheless uniformly arrived at the same conclusion. See VanDanacker v. Main Motor Sales Co., 109 F.Supp.2d 1045, 1053 (D.Minn.2000) (adopting recommendation of magistrate judge that Rule 11 motion be denied because movants had not fulfilled safe harbor prerequisite: “[a]dequate time is ... required for the [offending] party to correct its improper conduct, before such serious sanctions would be warranted”); Omega Sports, Inc. v. Sunkyong America, Inc., 872 F.Supp. 201, 203 (E.D.Pa.1995) (plaintiff’s failure to comply with safe harbor provision rendered any award of sanctions against defendant "unwarranted”); Thomas v. Treasury Mgmt. Assoc., Inc., 158 F.R.D. 364, 369 (D.Md.1994) (noting that compliance with safe-harbor provision "is absolutely prerequisite”).

. Although the Court's use of the words “ordinarily” and “normally” appear to contemplate an occasional deviation from the rule, there is nothing abnormal or out of the ordinary about the safe harbor provision. There are a few well-established exceptions to the mandatory nature of "shall,” e.g., Brock v. Pierce County, 476 U.S. 253, 106 S.Ct. 1834, 90 L.Ed.2d 248 (1986) (holding that government agencies are not necessarily divested of power to act after specific date by which statute commands that particular action *256 “shall” be taken), but, up to now, none could be found in Rule 11.

. I make two brief points in response to the assertions of my friend Judge Gregory in footnote 4 of his majority opinion. Ante at 254 n. 4.
First, imagine, if you will, we discovered on this appeal that we lacked subject matter jurisdiction. We would be compelled to dismiss, despite not having addressed the issue in the earlier appeal. The law of the case doctrine “does not apply to issues not addressed by the appellate court.” United States ex rel. Lujan v. Hughes Aircraft Co., 243 F.3d 1181, 1186 (9th Cir.2001).
Second, if we assume, arguendo, that the majority properly characterizes our initial remand as a limited one, the district court on remand could appropriately have determined the amount of the sanction award to be zero, given the utter failure of the defendants to comply with the Rule 11 safe harbor provision.