In re NEW MOTOR VEHICLES CA-
NADIAN EXPORT ANTITRUST
LITIGATION.

No. MDL 1532.

United States District Court,
D. Maine.

Feb. 25, 2005.

Robert S. Frank, Harvey & Frank, Port-
land, ME, for Plaintiffs.

William J. Kayatta, Jr., Pierce Atwood,
Portland, ME, for Defendants.

## PROCEDURAL ORDER

HORNBY, District Judge.

The next major issue in this multidistrict
lawsuit is whether to certify a class and, if so,
the scope of that class and any subclasses.
The lawsuit contains a claim for federal anti-
trust violations against automobile manufac-
turers and dealer associations, as well as
claims for state antitrust violations, state
consumer protection statute violations and
state common law restitution. As a result of
previous rulings the federal antitrust claim,
although countrywide, is limited to a claim
for injunctive relief. State antitrust damages
claims remain under the laws of sixteen
states and the District of Columbia; state
consumer protection damages claims remain
under the laws of fourteen states and the
District of Columbia; and state common law
restitution claims remain under the laws of
twenty-three states and the District of Co-
lumbia. (Some of the state law claims over-
lap.)

All parties agree that next I must deter-
mine whether the federal injunctive class can
be certified under Federal Rule of Civil Pro-
cedure 23(b)(2), and whether state law dam-
ages claims can be certified under Rule
23(b)(3). To that end, they have proposed an
acceptable schedule and procedure for re-
solving their disagreement over class certifi-
cation, with one exception, which I proceed to
discuss.

For the Rule 23(b)(3) analysis of class sta-
tus for state law damages claims, the plain-
tiffs propose to start with what they call an
"exemplar" state or states that they will se-
lect. They will then ask me to determine
whether a damages class can be certified for
that particular state or states.[1] They also
propose that, simultaneously, the California
and New Mexico state courts proceed to
determine whether statewide damages

---

1. The plaintiffs have referred me to *In re Cardiz-
em CD Antitrust Litigation* ("*Cardizem I*"), 200
F.R.D. 326 (E.D.Mich.2001), and *In re Relafen*
*Antitrust Litigation,* 221 F.R.D. 260 (D.Mass.
2004), as precedents for the use of exemplar
classes.

classes can be certified in those respective parallel state proceedings.[2] The plaintiffs suggest that if the California and New Mexico courts certify statewide classes in those state courts, then the plaintiffs probably will *not* seek to have the damages class in this federal multidistrict litigation ("MDL") class action lawsuit incorporate the residents of those states. *See* Transcript of February 15, 2005, Conference of Counsel ("Tr.") 20:6–10, 23–24 (where the plaintiffs stated that this Court "would not have to plow this ground twice, if [the New Mexico and California state court plaintiffs] or we as a team are successful in the state court in California or New Mexico. It would seem redundant to revisit that.").

The defendants disagree with the plaintiffs' proposal for the analysis of the 23(b)(3) class. They ask that I determine once and for all whether the MDL lawsuit can proceed as a class action and, if so, in what format. They say that the plaintiffs' proposal is both unfair and inefficient. Specifically, they complain that if the plaintiffs fail to achieve class certification in New Mexico or California state courts, they will simply try again here in the federal lawsuit, and that if they fail in their first one or two exemplar states here, they will simply propose additional exemplars. The defendants say that this procedure will create more delays and legal fees, as well as give unfair second and third chances to the plaintiffs.

I went into the conference of counsel on this topic on February 15, 2005, under the misapprehension that the plaintiffs were advancing their "exemplar" approach in a build-ing-block fashion, *i.e.,* that if they were successful in persuading me to certify exemplar classes in one or two states, their eventual goal was to have me certify a damages class across all (or most) remaining states.[3] Part of the reason for my assumption was the fact that each of the transferred lawsuits in this MDL litigation and the Consolidated Amended Complaint in this District (Docket Item 32) purported to seek certification of a nationwide damages class. Several readings of the Transcript of the February 15, 2005, conference, however, have persuaded me that neither the plaintiffs nor the defendants any longer have a nationwide damages class in mind. Instead, it appears that both sides contemplate arguing over certifying a nationwide Sherman Act injunctive relief class, and individual state-by-state damages classes.[4] At the conference, the plaintiffs clarified that under their proposal, they would have "one nationwide injunctive class" and "individual certifications for each state class, not one nationwide damages class" on the state claims. Tr. 22:20–22, 46:22–24, 47:13–18; *see also id.* 23:17 (stating that the case involves twenty-three-plus state classes). The plaintiffs' characterized the defendants' proposal similarly, as "having [the plaintiffs] move for twenty-three different classes to be certified." *Id.* 47:4–12. (The difference between the proposals is that the defendants would have the plaintiffs move on all states at once, whereas the plaintiffs would initially advance only one or some of their state classes as exemplars. *Id.* 47:4–18.) The defendants did not object to this characterization or otherwise suggest that they were contem-

---

**2.** The lawyers informed me at the conference of counsel February 15, 2005, that the New Mexico and California state lawsuits seek to certify only a statewide (not countrywide) damages class, Transcript of February 15, 2005, Conference of Counsel 21:25 to 22:3, 28:23–25, 33:12–14, and will not seek injunctive relief, *id.* 52:14–22.

**3.** Such an approach would certainly complicate the analysis required by Rule 23(b)(3).

**4.** There was some uncertainty at the conference about whether the plaintiffs would move for state-by-state damages classes or would group state claims together (*i.e.,* a class consisting of the antitrust laws of some states, a class consisting of the consumer protection laws of some states, etc.). Although the plaintiffs repeatedly spoke at the conference of twenty-three-plus individual, state-by-state classes, *see* Tr. 22:20–22, 23:17, 47:13–18, the plaintiffs also noted at the conference (perhaps only in response to my questions) that multiple state claims would be tried together, *see id.* 23:14–24:6 (indicating that jury instructions and verdict forms would cover multiple states' laws); *id.* 49:2–13 (stating that one jury would have to make state-by-state determinations of liability and damages, and "would be asked to determine whether there was a conspiracy, whether the conspiracy violated the state laws of the states that are before the Court … And then the jury would be asked to find damages appropriate for those violations pursuant to the laws of the states.").

plating argument over one nationwide damages class on the state claims rather than over individual state classes.

Given the current shape of this MDL proceeding I do not yet accept the parties' premise that the dispute here is about a nationwide federal injunctive class and individual state-by-state damages classes. I must keep in mind that twenty-six lawsuits from seven districts were transferred here. When all the pretrial proceedings are complete, the Multidistrict Panel will send each of those lawsuits back to its respective transferor district, according to *Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 28, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998).[5] I expect to judge the appropriateness of class certification accordingly. I believe that, unless there is some different agreement from the parties, what the MDL Panel sends back must relate in some way to what was originally filed in the transferor district. But in light of what has happened in this transferee district, I now have state law claims for states that are not transferor districts. Where does the Multidistrict Panel send them? And the complaints that I have seen from the transferor districts purported to seek damages for a nationwide class.[6] Although I have dismissed that Sherman Act damages claim, the plaintiffs then filed a consolidated amended complaint in this District that likewise seeks damages on behalf of a nationwide class, albeit now on the basis of state laws. On what basis will the Multidistrict Panel split that claim up and send back to, say, California only the California state law damages claim and to Massachusetts only the Massachusetts state law damages claim, etc.?[7]

The defendants intimated at the conference that they believe that the plaintiffs' actions in this transferee district have waived any *Lexecon* argument to transfer matters back at the close of pretrial proceedings. *See* Tr. 53:4–7 ("*Lexecon* may not have a role. The plaintiffs here filed a national complaint in this Court."). The plaintiffs' arguments also suggest that I have power to shape this litigation in a way that the ultimate trial judge would have. *See id.* 48:12–18 (statement by the plaintiffs' attorney that "I don't have a quick answer to exactly what it is we are sending back to California where they filed the first case. But I think what we would envision is if that were the case it is much more likely that maybe this Court would have to deal with a trial of the issues because there are numerous claims brought

---

**5.** That is, unless I have dismissed all the claims in that lawsuit or granted summary judgment, or the case has settled.

**6.** I have not seen all of these complaints because the files I received from the transferor districts did not always include a copy of the complaint filed there. But at the conference, the plaintiffs did not object to my characterization of these complaints as seeking a nationwide class or indicate that these complaints purported to state a claim for anything other than a nationwide class.

**7.** I have also looked more carefully at the two cases that certified "exemplar" classes, namely, *Relafen*, 221 F.R.D. 260, and *Cardizem I*, 200 F.R.D. 326. *Relafen* was not a multidistrict proceeding. Instead, all the lawsuits but one had been filed in Massachusetts and assigned to Chief Judge Young. (One case came from the Eastern District of Pennsylvania on a motion for a change of venue under 28 U.S.C. § 1404. *See Relafen*, 221 F.R.D. at 278 n. 14.) Thus, Chief Judge Young had full authority to shape the litigation. What he did was to certify for trial two classes: one state antitrust and consumer protection class that consisted of all claims in four states, and a separate state unjust enrich-

ment class that consisted of all claims in five states, after performing a classic Rule 23 analysis as to each class. *Id.* at 267–88. These classes were exemplars only in the sense that they were scheduled first for trial, and would presumably be the models for later classes to follow. *Cardizem* was a multidistrict proceeding, but Judge Edmunds used the exemplar class for cases that had started initially in state court with only state law claims, then been removed on diversity grounds to federal court and ultimately transferred to her. *In re Cardizem*, 218 F.R.D. 508, 511–14 (E.D.Mich.2003) (describing the background of the state claims and exemplar class). Presumably each of these state law claims was stated on behalf of a statewide, not a countrywide class. Moreover, one case had been filed instate court in Michigan, where she sits (Eastern District), *see id.*, and she therefore had full authority over the shape of that lawsuit. The Michigan case, in fact, was the case that she chose to be her exemplar. *Cardizem I*, 200 F.R.D. at 330. She also proceeded in classic Rule 23 fashion to analyze whether a Michigan-wide class could be certified. *See id.* at 334–52. Thus, neither case is particularly apt given the current shape of this multidistrict proceeding in the District of Maine.

the first time in this Court."). I conclude that we must resolve explicitly the scope of my authority over this MDL litigation before I can decide how to address the class certification issues as the parties are framing them. Only then will ·I be able to understand the significance of the Rule 23 factors as I assess the scope of the class(es) or subclass(es) proposed by the plaintiffs and opposed by the defendants.

Consequently, I Order that by March 11, 2005, the parties either file a stipulation that all the transferred lawsuits are now in this District finally, not subject to transfer back under *Lexecon;* or their respective legal arguments as to why the filings and other activities in this District have or have not resulted in a consent to this court's jurisdiction to handle all matters through trial and judgment, together with the consequences for any limitations on this court's authority to shape any class(es) or subclass(es) to be certified.[8]

In the meantime, however, the parties shall proceed with their class-related discovery under the proposed deadline. Whatever I end up doing with the exemplar proposal so far as briefing and certification are concerned, full discovery should occur now concerning all the potential class(es) or subclass(es).[9]

Finally, I do not see why I should endorse the plaintiffs' proposal to encourage the New Mexico and California state judges to proceed to consider certification in state court at this time. If I decide to follow the defendants' proposal and assess all state damages classes simultaneously, I will have to look at those New Mexico and California classes here in federal court as well. And even if I follow the plaintiffs' exemplar proposal, it may turn out that the defendants ask me to treat one or both of those states as an exemplar. Thus, it remains highly likely that this federal court will need to assess class certification for one or both of those state damages classes. Certainly, the New Mexico and California state courts have full authority to proceed whenever and however they choose, and they do not need my approval to do so. But the state judges also may have enough other business before them, such that they will not want to duplicate the federal proceedings unnecessarily. I conclude that it is best to proceed apace with the federal litigation without suggesting to the state courts that it is appropriate for them to engage now as well.[10]

So Ordered.

---

8. In either event, I do not mean to foreclose the personal jurisdiction arguments that have been raised by some Canadian defendants.

9. I also observe that if ultimately I decide to follow the exemplar proposal I could avoid some of the potential unfairness by allowing each side to choose its favorite one or two states for argument over certification. Presumably the defendants' concern is that if the plaintiffs choose their best state and achieve certification, that will increase the plaintiffs' leverage in settlement negotiations. Permitting the defendants to select an exemplar (presumably the most difficult state for the plaintiffs) could even the balance.

10. The plaintiffs complain that they should be entitled to control the shape of their lawsuit, and that is true, within the scope of the Federal Rules of Civil Procedure. The plaintiffs may be able to dismiss voluntarily one or more of their claims under Rule 41(a) because the defendants have not yet filed an Answer. Alternatively, perhaps they can make a final decision now to exclude certain states from their class action certification requests. Those are choices for them to make, with whatever consequences ensue.