In the
United States Court of Appeals
For the Seventh Circuit

Nos. 01-4049 & 01-4050

Abbott Laboratories, Zeneca, Inc.,
and Merck & Co., Inc.,

Plaintiffs-Appellants,

v.

CVS Pharmacy, Inc., CVS Corp.,
and CVS Revco D.S., Inc.,

Defendants-Appellees.

Appeals from the United States District Court
for the Northern District of Illinois, Eastern Division.
Nos. 01 C 2772 and 01 C 2784--Charles P. Kocoras, Judge.

Argued April 19, 2002--Decided May 15, 2002

   Before Bauer, Posner, and Easterbrook,
Circuit Judges.

   Easterbrook, Circuit Judge.  This is
another installment in the Brand Name
Prescription Drugs saga. Many purchasers
of prescription drugs accused the
manufacturers and wholesalers of
violating the antitrust laws. Some of the
claims have been tried; others have been
the subject of summary judgment. See In
re Brand Name Prescription Drugs
Antitrust Litigation, No. 00-2464 (7th
Cir. May 6, 2002); In re Brand Name
Prescription Drugs Antitrust Litigation,
186 F.3d 781 (7th Cir. 1999). In 1996 two
of the defendants (Zeneca and Merck)
settled with the class, and in 1998 a
third defendant (Abbott Laboratories)
settled on similar terms. Because the
class had been certified under Fed. R.
Civ. P. 23(b)(3), any member was free to
opt out and litigate separately. Today's
case concerns claims by Revco Drug
Stores, Hook-SupeRx, and Brooks Drug,
three retail chains that opted out.
(Revco has acquired both Hook- SupeRx and
Brooks Drug, so for simplicity we speak
only of Revco.)

   Revco's suit is pending in the United
States District Court for the Middle
District of Pennsylvania. Nonetheless,

Abbott Laboratories and the other two manufacturers (collectively "Abbott") asked the United States District Court for the Northern District of Illinois, which approved the 1996 and 1998 settlements, to issue a declaratory judgment to the effect that the settlements block Revco's action. The ground of relief? That in 1997 CVS Corp., the parent of CVS Pharmacy, Inc., which had not opted out, acquired Revco as a subsidiary. Each settlement includes a release of all claims by every class member, including its affiliates. Because Revco has become CVS Corp.'s subsidiary, and thus CVS Pharmacy's affiliate, Abbott contends that Revco's claims are blocked by the release.

The district judge ruled against Abbott, explaining that the reference to affiliates must be reconciled with another provision in the settlement allowing opt outs to pursue their claims. Neither of these has linguistic priority; but as a functional matter the clause preserving opt outs' rights must prevail when an opt-out plaintiff also is an affiliate of a settling plaintiff, the judge thought. 2001 U.S. Dist. Lexis 17620 (N.D. Ill. Oct. 24, 2001). Read together, these clauses prevent class members from using affiliates to smuggle the class member's own claims back into court, the judge found. Bottom line: Revco's claims are distinct from those of CVS Pharmacy and thus are outside the release.

Asking one federal court to resolve an issue that is before another is problematic. Only one federal court at a time should handle a case, see Colorado River Water Conservation District v. United States, 424 U.S. 800, 817 (1976), and a release, as an affirmative defense, see Fed. R. Civ. P. 8(c), is ordinary business for the court before which the main action is pending. See Lucille v. Chicago, 31 F.3d 546, 549 (7th Cir. 1994). "Declaratory judgment should not be granted . . . to interfere with an action already instituted." Sears, Roebuck & Co. v. American Mutual Liability Insurance Co., 372 F.2d 435, 438 (7th Cir. 1967). Cf. Pettibone Corp. v. Easley, 935 F.2d 120, 122, 123-24 (7th Cir. 1991). We appreciate the good sense of having Judge Kocoras, who has handled the Brand Name Drugs litigation for many years and who approved the settlements,

determine whether a particular suit violates the terms of those settlements. See Lynch, Inc. v. SamataMason Inc., 279 F.3d 487 (7th Cir. 2002). There was a simple way for him to do this. All of the suits, including Revco's, had been transferred to Judge Kocoras by the Panel on Multidistrict Litigation for pretrial management under 28 U.S.C. sec.1407. Judge Kocoras could have ruled on this affirmative defense before asking the Panel to send Revco's suit back to its original district. Revco wanted him to do this, but he denied its motion without giving a reason, so Revco's suit returned to Pennsylvania with the effect of the releases unresolved. Only after the remand did the judge turn to Abbott's independent suit asking him to declare that the release blocks Revco's suit. This sequence has caused more than a procedural imbroglio, with the subject potentially before two district courts simultaneously. It has created a problem with federal subject-matter jurisdiction.

Revco's suit against Abbott arises under the federal antitrust laws; there is no need for any additional grant of jurisdiction to adjudicate the defense of release in Revco v. Abbott.[1] But Abbott's independent suit against Revco does not arise under the antitrust laws-- and, because both Revco and one manufacturer are incorporated in Delaware, it cannot rest on the diversity jurisdiction either.[2] Although the class action that ended in settlement was within federal-question jurisdiction, the settlement is just a contract, so a suit on the settlement needs an independent basis of federal jurisdiction, see Kokkonen v. Guardian Life Insurance Co., 511 U.S. 375 (1994), which here is lacking because parties on both sides have the same corporate citizenship. Kokkonen implies, and Jessup v. Luther, 277 F.3d 926 (7th Cir. 2002), holds, that interpretation of a settlement contract is governed by state law even if the settled claim arose under federal law; otherwise a suit directly on the settlement agreement also would arise under federal law, and the holding of Kokkonen would be overthrown.

Kokkonen observes that a district judge may retain jurisdiction to enforce a settlement. 511 U.S. at 381. Then the supplemental jurisdiction supports later

adjudication. Both settlement agreements provide for such a retention of jurisdiction, and by incorporating these agreements into his orders the district judge set the stage for later litigation to enforce their terms. Oddly, however, Abbott did not file motions in the Brand Name Prescription Drugs class action, the suit whose jurisdiction had been retained by the settlement. Instead Abbott filed an independent action, which has been docketed separately. (Actually there are two independent actions, one by Abbott and the other by Zeneca and Merck, but recall that we are simplifying the exposition.) By choosing to proceed separately, Abbott may have surrendered the benefit of the supplemental jurisdiction. See Peacock v. Thomas, 516 U.S. 349 (1996). Yet there would be little point in vacating the judgment, only to have Abbott file a new motion in the Brand Name Prescription Drugs class action, in the same district court before the same judge. We shall treat the independent suit as equivalent to that motion.

Still, Abbott is not out of the jurisdictional woods. The district court's reservation of jurisdiction to enforce the settlement entitled it to adjudicate a dispute between Abbott and CVS Pharmacy, which was in the class at the time of the settlement. But it does not create jurisdiction of claims against Revco (now formally "CVS Revco D.S., Inc."), which had opted out, or CVS Corp., a holding company that has never been in the pharmacy business and lacks any claim under the antitrust laws. As Peacock holds, a suit involving Party A does not permit a district court to enter a judgment against Party B, even when A and B are affiliated. In Peacock, A was a corporation and B its dominant shareholder. Here, A is a corporation that indirectly (through C) owns all of the shares in B. The principle is the same. Unless it is possible to collapse the legal identities of the parties--and Abbott does not contend that the requirements for "piercing the corporate veil" and treating all of the CVS entities as a single person have beensatisfied--each litigant is entitled to separate handling. See Phillip I. Blumberg, The Law of Corporate Groups sec.8.03 (1987). Compare Sears, Roebuck & Co. v. CIR, 972 F.2d 858 (7th Cir. 1992),

with NLRB v. International Measurement and Control Co., 978 F.2d 334 (7th Cir. 1992). That a judgment binds one corporation does not allow a court to ad judicate claims against its shareholders, subsidiaries, or other juridically distinct entities. See Holmes v. SIPC, 503 U.S. 258 (1992); Teamsters Health and Welfare Trust Fund v. Philip Morris Inc., 196 F.3d 818 (7th Cir. 1999); Mid-State Fertilizer Co. v. Exchange National Bank, 877 F.2d 1333 (7th Cir. 1989); Carter v. Berger, 777 F.2d 1173 (7th Cir. 1985). Each corporation's interests are distinct, and its legal attributes do not leak to investors or subsidiaries. This norm applies fully to fraternal corporations in holding-company groups, as Blumberg's treatise shows. The settle ment and release binds CVS Pharmacy but not CVS Corp. or Revco, so the reservation of jurisdiction is limited to disputes involving CVS Pharmacy.

Abbott observes that the supplemental jurisdiction sometimes allows the resolution of disputes that are closely related to the original litigation. Controversies about attorneys' fees for work in the underlying suit are prime examples. See, e.g., Dale M. v. Board of Education, 282 F.3d 984 (7th Cir. 2002); Baer v. First Options of Chicago, Inc., 72 F.3d 1294, 1301 (7th Cir. 1995). Ever since 28 U.S.C. sec.1367(a) overturned Finley v. United States, 490 U.S. 545 (1989), the supplemental jurisdiction has been capacious enough to include claims by or against third parties. See Stromberg Metal Works, Inc. v. Press Mechanical, Inc., 77 F.3d 928 (7th Cir. 1996). All this is true enough, but Revco is not CVS Pharmacy's lawyer, or any other kind of agent. Revco and CVS Pharmacy are distinct corporations--parts of the same corporate group, to be sure, but as we have already explained this affiliation is not enough to justify a rule that ability to sue one of the corporations authorizes suit against the others. See Richard A. Posner, The Rights of Creditors of Affiliated Corporations, 43 U. Chi. L. Rev. 499 (1976). Peacock holds that the supplemental jurisdiction does not allow vertical veil-piercing (between a corporation and its investors or managers); no more does the supplemental jurisdiction warrant lateral veil-piercing (between fraternal corporations). Abbott does not have even

a claim against CVS Corp. just because it is CVS Pharmacy's parent, so it would be inappropriate to bring CVS Corp. in under the supplemental jurisdiction. What is more, the point of allowing opt outs is to separate the claims of class members from those of others. See, e.g., Matsushita Electric Industrial Co. v. Epstein, 516 U.S. 367, 385 (1996); Premier Electrical Construction Co. v. National Electrical Contractors Ass'n, Inc., 814 F.2d 358, 362-63 (7th Cir. 1987). If parties that have opted out could be dragged back in under the supplemental jurisdiction, a core function of Rule 23(b) would be nullified. So whatever scope may be left, after Peacock, for the adjudication of claims by or against third parties other than attorneys, that power cannot be asserted against an entity that has opted out of a class action. Revco must be dismissed as a defendant in Abbott's independent actions.

CVS Pharmacy is not a party to Revco's antitrust suit, now pending in Pennsylvania. This leads CVS Pharmacy to contend that, although the district judge has reserved jurisdiction with respect to its disputes with Abbott, no case or controversy exists between CVS Pharmacy and Abbott. On this view Abbott's only option is to plead the release as a defense to Revco's antitrust suit. Yet although CVS Pharmacy cannot reach out its finger and deliver a Zeus-like bolt that will end Revco's suit, it may be able to influence Revco to dismiss the suit. Whether CVS Pharmacy must exercise such influence as it possesses is a justiciable controversy. President Nixon could not summarily revoke the subpoena that Special Prosecutor Cox had procured, and could not fire Cox either; but he could direct the Attorney General, who had the power to replace the special prosecutor, to exercise that authority, and, when Attorney General Richardson resigned rather than comply, the President could and did replace him with someone who would follow orders. Just so with a parent corporation. Only the subsidiary's board of directors or ceo can dismiss Revco's suit against Abbott, but the parent may (if necessary) replace the subsidiary's directors and managers. So we shall ask whether Abbott is entitled to an order compelling CVS to use the instruments at its disposal to ensure that Revco dismisses the pending

litigation. This is not the precise relief for which Abbott has asked, but it likely would come to the same thing and must be considered--for a prevailing party obtains the relief to which it is entitled, whether it asked for that relief or not. Fed. R. Civ. P. 54(c).

Both settlement agreements provide that

all manner of claims . . . any class plaintiff or plaintiffs or any member or members of the Class who have not timely excluded themselves from the Class Action (including any of their past, present or future officers, directors, stockholders, agents, employees, legal representatives, trustees, parents, associates, affiliates, subsidiaries, partners, heirs, executors, administrators, purchasers, predecessors, successors, and assigns) . . . ever had, now has or hereafter can, shall or may have, relating [to the conduct alleged in the Class complaint are released.]

The agreements also provide, as Rule 23 requires, that any entity opting out is not bound by the judgment. Revco opted out and therefore is not bound by the judgment. Nonetheless, Abbott insists, it is today (and was in 1998, at the time of the second settlement) an "affiliate" of CVS Pharmacy (CVS Pharmacy and Revco, two subsidiaries of CVS Corp., are fraternal members of a corporate group), and all claims of "affiliates" are wiped out under what Abbott calls the plain language of the release clause.

Read together with the opt-out clause, however, this language is not at all plain--and it makes no sense to read the two clauses in isolation, for each is part of the other's linguistic and economic context. See Beanstalk Group, Inc. v. AM General Corp., 283 F.3d 856 (7th Cir. 2002). What happens when a firm is covered by both clauses--one because it has opted out and the other because it is an affiliate of a firm that did not opt out? The settlement does not say in so many words, but it makes the most economic sense to say that the rights of the opt-out party are preserved. Otherwise firms such as Revco would be worth more if they remained independent (or were acquired by a firm in a different industry) than if they were acquired by a settling pharmacy. Yet what

sense would it make to say that the value of Revco's claim against Abbott--a value that Revco's investors would enjoy as long as it remained independent or were acquired by a bystander--simply vanished on acquisition by CVS or any other settling party? It would make no sense that we can see. Cf. Palazzolo v. Rhode Island, 533 U.S. 606 (2001) (a takings claim survives transfer of the property to a new owner). Certainly this disappearing-value trick was not something for which the parties negotiated, or for which any part of the settlement price compensated either Revco's or CVS's investors.

Even viewed in isolation, the release clause is ambiguous. The parenthetical beginning "including" might be read, as Abbott prefers, to obliterate the claims of all corporate affiliates. But it also could be read to say only that it makes no difference who prosecutes a class member's claim. On the latter reading, CVS Pharmacy's claim is released even if transferred to and prosecuted by an affiliate or officer--this prevents evasion of the settlement--but no claim held by a separate juridical entity is released. The district judge chose the latter reading, under which all of the language in parentheses modifies "member . . . of the Class" but does not establish a free-standing limitation. That's a sensible approach.

Otherwise what is one to make of the fact that the parenthetical expression contains words such as "stockholders" and "heirs"? Let us assume that Revco remained independent but that its portfolio included one share of Walgreen stock. That would make Revco a Walgreen "stockholder" and extinguish its claim, according to Abbott's reading of the language, because Walgreen did not opt out of the class. Or consider the possibility that Smith, who owned a pharmacy that remained in the class, had made his son-in-law Green, whose pharmacy opted out, the beneficiary of his will. On Abbott's reading, Green's claim is ob literated by the release, because Green is Smith's heir. Or consider Perkins, who was an employee of CVS (running errands in its mail room) until 1970, when he quit and founded his own chain of pharmacies. Because Perkins is in the set of CVS's "past, present or future . . .

employees", on Abbott's reading Perkins lost his right to recover damages for antitrust violations when in 1996 CVS decided not to opt out of a class action. That would be not only nonsensical but also blatantly unconstitutional (the court would have deprived Perkins of property without due process). So the release language just can't mean what Abbott says it means. That leaves the district court's approach, which is sensible both linguistically and functionally. The settling class members' claims are released, no matter who tries to prosecute them, but no other claims are affected.

CVS Pharmacy did not own Revco's claim in 1996 or 1998 (and for that matter does not own it today); Revco's claim therefore is not affected by the settlement and release. Thus CVS Pharmacy is not under any obligation to induce Revco to drop its suit, or to give back the money if Revco prevails. The district judge reached the same conclusion, and its judgment is affirmed with respect to CVS Pharmacy. With respect to CVS Corp. and CVS Revco D.S., Inc., the judgment is vacated, and the matter is remanded with instructions to dismiss those corporations for lack of subject-matter jurisdiction. Appellees recover their costs.

FOOTNOTES

/1 Surprisingly, Abbott contends in a post-argument memorandum that the Middle District of Pennsylvania lacks jurisdiction to entertain the defense of release. Because defenses do not require an independent jurisdictional footing, this position is hard to understand. Abbott points to a clause in the settlement stating that the Northern District of Illinois has "exclusive jurisdiction" to enforce its terms. Yet neither the parties by contract, nor a district judge by approving such a contract, may expand or contract any court's jurisdiction. The powers of the Middle District of Pennsylvania depend on the Constitution and the United States Code, not on the consent of any litigant. Contracts may affect venue, and maybe this is the right way to understand the "exclusive jurisdiction" clause, but as a non-party to the settlement Revco is not bound by any allocation of venue to Illinois. Any effort to move venue without Revco's consent would violate the holding of Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach, 523 U.S. 26 (1998), that the transferee court under sec.1407 must return each

case to its originating district for disposition after the pretrial phase has been completed.

/2 To be precise, Zeneca, CVS Corp., and Revco are incorporated in Delaware. Merck is incorporated in New Jersey. Abbott is incorporated and has its principal place of business in Illinois, while CVS Pharmacy is incorporated and has its principal place of business in Rhode Island. Thus a suit by Abbott against the three CVS entities could proceed under the diversity jurisdiction. But, until after the oral argument, Abbott had not tried to distinguish itself from Zeneca and Merck in this fashion--and if we were to consider separately Abbott's action against Revco we would quickly be led to the question whether a ground that should be an affirmative defense in Revco v. Abbott may be litigated as an independent action. Given the resolution reached below about the proper resolution of a suit against CVS Pharmacy alone, it is unnecessary to pursue this to conclusion.