In the

# United States Court of Appeals

## For the Seventh Circuit

No. 02-4069

ALISON LEBER, *et al*.,

*Plaintiffs-Appellants*,

*v.*

UNIVERSAL MUSIC AND VIDEO DISTRIBUTION, INC., *et al*.,

*Defendants-Appellees*.

Appeal from the United States District Court
for the Southern District of Illinois.
No. 99-cv-4276-JPG—**J. Phil Gilbert**, *Judge*.

ARGUED MAY 19, 2003—DECIDED JUNE 9, 2003

Before EASTERBROOK, ROVNER, and EVANS, *Circuit Judges*.

EASTERBROOK, *Circuit Judge*. Until four years ago, Universal Music and Video Distribution operated facilities in Pinckneyville, Illinois, that not only made compact disks (CDs) but also handled returns of unsold or defective products. Manufacturing and returns were separate departments, though employees of both were represented by the International Leather Goods, Plastics, Novelty and Service Workers Union under a single collective bargaining agreement. Late in 1998 Universal began to negotiate with Panasonic Disc Services Corporation about the possibility of expanding the plant to make digital

versatile discs (DVDs) as well as CDs. Panasonic was interested in the manufacturing facilities but not Universal's returns department. In May 1999 Universal and Panasonic formed Matsushita Universal Media Services LLC (MUMS), a Delaware limited liability company, which acquired Universal's CD-manufacturing assets but not its returns assets. Panasonic contributed the cash needed to expand the facility into DVD production. MUMS hired most of the employees who had worked in the CD-making facility; it recognized the Union as their representative and signed a new collective bargaining agreement containing the same economic terms as before, but some changes in work rules. Universal notified the Union that the returns facility (which it retained) would be closed, and it honored all promises that the collective bargaining agreement made to laid off employees. Some of the returns-department staff found work at MUMS, which agreed to give them a preference in hiring, for it needed extra employees to expand into DVDs. Some of the returns employees were not hired under this preference, however. (The record does not disclose why.) When MUMS refused to give laid off returns-department workers a right to displace persons who had less seniority at Universal, they sued MUMS, Universal, Panasonic, and the Union for breach of the collective bargaining agreement. (Since this suit began, affiliations have changed. Panasonic Disc Services has been acquired by Thompson Multimedia Inc. and renamed Technicolor Disc Services Corporation. MUMS now is TUMS. The Union, which used to be affiliated with the Service Employees International Union, AFL-CIO, now is Local 2000 of the SEIU, and the body representing MUMS' employees is Chapter 352 of Local 2000. We use the old names for convenience.)

Plaintiffs are not parties to the collective bargaining agreement, and the Union does not believe either that Universal has failed to keep its promises or that MUMS

acquired any of Universal's obligations under the old agreement. To bypass the Union and sue in their own right, the employees first must establish that the Union violated its duty of fair representation. See *Air Line Pilots Ass'n v. O'Neill*, 499 U.S. 65 (1991). The district court found that the Union had fulfilled all duties and on that account granted summary judgment for the defendants. 225 F. Supp. 2d 928 (S.D. Ill. 2002). The court added, for good measure, that (a) neither Panasonic nor MUMS acquired any of Universal's obligations, so that MUMS' failure to give the plaintiffs transfer or bumping rights could not violate any of plaintiffs' entitlements under that collective bargaining agreement, and (b) Universal had not been served with process and thus is not a party to begin with.

Service should have been the lead item in plaintiffs' appellate brief, for their rights derive from an agreement between Universal and the Union, and if Universal is not a party to the case then their claim has little prospect of success. Yet plaintiffs' opening brief ignores the problem. Plaintiffs do not get around to it until their reply brief, which is too late. Any contest to this ingredient of the district court's resolution has been forfeited. What plaintiffs contend, in an effort to sidestep the consequences of their failure to make Universal a party, is that Panasonic and Universal formed a joint venture or partnership in the months between the outset of negotiations and the formation of MUMS. Suppose that this is so—though we very much doubt it, for negotiations differ from agreements. See *Lerro v. Quaker Oats Co.*, 84 F.3d 239 (7th Cir. 1996). Neither Panasonic nor Universal purported to act in MUMS' name before its technical formation. It was MUMS and Universal, not "the joint venture," that agreed that Universal would retain the returns department. And it was MUMS, not "the joint venture," that declined to hire the plaintiffs or give them seniority over other workers. Once

MUMS came into being, Universal became its investor. Plaintiffs do not contend that MUMS, Panasonic, and Universal have failed to observe the formalities of corporate (or LLC) life, so MUMS cannot be held liable on a contract to which only Universal is a party, any more than Universal may be held liable on a contract to which only MUMS and the Union are parties. See 6 Del. Code §18-303; *Abbott Laboratories v. CVS Pharmacy, Inc.*, 290 F.3d 854, 858 (7th Cir. 2002); *Secon Service System, Inc. v. St. Joseph Bank & Trust Co.*, 855 F.2d 406, 416-17 (7th Cir. 1988). Compare *NLRB v. International Measurement & Control Co.*, 978 F.2d 334, 339-41 (7th Cir. 1992), with *Esmark, Inc. v. NLRB*, 887 F.2d 739, 749-52 (7th Cir. 1989). See also *Fall River Dyeing & Finishing Corp. v. NLRB*, 482 U.S. 27, 41-43 (1987) (successor employer not bound by predecessor's collective bargaining agreement unless this is an essential remedy for unfair labor practices such as refusing to hire union adherents on equal terms); *NLRB v. Burns International Security Services, Inc.*, 406 U.S. 272, 285-87 (1972) (same). MUMS hired union adherents who applied and immediately recognized and bargained with the Union; it is therefore bound by the new terms, not its predecessor's. Contrast *U.S. Marine Corp. v. NLRB*, 944 F.2d 1305 (7th Cir. 1991) (en banc). There is thus no way in which the Union, Panasonic, and MUMS, the only defendants that became parties to the case, could be held liable for any wrongs committed by Universal. (After all, the Union did not agree to employ or pay the plaintiffs; any obligation along those lines rests on Universal itself.) Even if Universal *should* have paid MUMS to assume the old collective bargaining agreement or hire the returns-department employees, the fact remains that it did not—and, as a non-party, cannot be ordered to do so now. This makes it unnecessary to determine whether the Union may have violated its duty of fair representation.

Plaintiffs seem to think that technical rules of law just do not matter, because (in plaintiffs' view) MUMS hood-

winked the State of Illinois. According to plaintiffs, MUMS got a tax break for augmenting the number of local jobs but concealed from Illinois the fact that the *net* increase (new DVD workers less laid-off returns workers) would be small. It is hard to give the flavor of this argument without using plaintiffs' words, so we quote the lead paragraph in their brief:

> The District Court erred when it concluded there is no evidence that MUMS creation was improper motive or by any unlawful purpose. District Court erred in acknowledging the fact that EDGE [the state's Economic Development for a Growing Economy program], a campaign promise of former Illinois Governor George Ryan worked, but did not consider the evidence of improper economic motive or the unlawful purpose of Universal and Panasonic in receiving tax benefits by replacing 184 returns employees who were qualified, with replacement workers, which MUMS claimed as "new employees" under 35 ILCS 10/5-5 for tax benefits under EDGE application Illinois Compiled Statutes, Chapter 35, Revenue, Income Taxes, Act 10 Economic Development for a Growing Economy Tax Credit Act submitted by MUMS. The Court erred in failing to consider the timing of Senate Bill 40, to consider the effect of former Illinois Governor Ryan's campaign promise to help fund the MUMS's project with state funds prior to MUMS formation and to consider the unique 60% Panasonic 40% Universal composition of MUMS under provision of EDGE.

The brief contains more in the same vein, but plaintiffs never explain how "the timing of Senate Bill 40" and the like have any bearing on their legal entitlements—or why, indeed, they are entitled to litigate MUMS' tax liability. See *Allen v. Wright*, 468 U.S. 737 (1984). How much MUMS pays in state taxes (or receives in subsidies) is between

MUMS and the State of Illinois. The meaning and effect of collective bargaining agreements are matters of federal law. See *Textile Workers v. Lincoln Mills*, 353 U.S. 448 (1957). Nothing a state legislature does with respect to taxes or subsidies enlarges or diminishes any rights under a collective bargaining agreement. The district court properly dismissed this case.

AFFIRMED

A true Copy:

Teste:

_____
*Clerk of the United States Court of*
*Appeals for the Seventh Circuit*