**SSM REHABILITATION INSTITUTE,**
Plaintiff–Appellant,

v.

**Donna E. SHALALA, Secretary of Health and Human Services,**
Defendant–Appellee.

No. 94–4085.

United States Court of Appeals,
Eighth Circuit.

Submitted May 15, 1995.

Decided Oct. 19, 1995.

Leslie Goldsmith, Baltimore, MD, argued (Carel T. Hedlund, Baltimore and David M. Harris, St. Louis, MO, on the brief), for appellant.

Mary D. Purcell, Kansas City, MO, argued, for appellee.

Before MAGILL, HENLEY, and LOKEN, Circuit Judges.

LOKEN, Circuit Judge.

The issue in this Medicare provider reimbursement case is whether SSM Rehabilita-tion Institute ("SSM") is entitled to a "new hospital" exemption because its provider cer-tification was changed from long-term care hospital to rehabilitation hospital. An ex-emption would change the base year to which inflation cost adjustments were applied, re-sulting in significantly increased reimburse-ments during the 1984–1987 period. The Secretary of Health and Human Services concluded that the change in certification did not justify a new hospital exemption because SSM had previously provided comprehensive rehabilitation services. The district court [1] upheld the Secretary's decision. We affirm.

## I.

During the years in question, the Secre-tary's Health Care Financing Administration ("HCFA") reimbursed SSM for services to Medicare beneficiaries. Reimbursement payments were made by the Secretary's "fis-cal intermediary," Blue Cross and Blue Shield of Missouri (the "Intermediary"). See 42 U.S.C. § 1395h. The "new hospital" ex-emption SSM seeks would entitle it to addi-tional reimbursements totaling $473,499 in 1984, $368,794 in 1985, $276,593 in 1986, and $332,000 in 1987.

From 1970 through 1983, HCFA certified SSM's facility in south St. Louis as a long-term care hospital provider. The signifi-cance of that classification under prior law is unimportant; the issue in this case was trig-gered by two major statutory changes in provider reimbursement. First, in the Tax Equity and Fiscal Responsibility Act of 1982 ("TEFRA"), Pub.L. No. 97–248, 96 Stat. 324 (1982), Congress modified its "reasonable cost" method of reimbursing Medicare pro-viders by limiting the increases in operating costs that a hospital may recover to offset inflation. See 42 U.S.C. § 1395ww(b)(3); *Episcopal Hosp. v. Shalala,* 994 F.2d 879, 880–81 (D.C.Cir.1993), *cert. denied,* —— U.S. ——, 114 S.Ct. 876, 127 L.Ed.2d 73 (1994). Second, in 1983, Congress replaced the TEFRA–modified reasonable cost method of reimbursing hospital operating costs with the Prospective Payment System ("PPS"). *See*

1. The HONORABLE EDWARD L. FILIPPINE, Chief Judge of the United States District Court for the Eastern District of Missouri, who adopted the report and recommendation of United States Magistrate Judge FREDERICK R. BUCKLES.

Pub.L. No. 98–21, § 601(e), 97 Stat. 65, 149 (1983), codified as amended at 42 U.S.C. § 1395ww(d).

In enacting the new PPS, Congress excluded certain types of specialty hospitals, including long-term care hospitals and rehabilitation hospitals. *See* 42 U.S.C. § 1395ww(d)(1)(B). In August 1983, SSM applied to HCFA for a PPS exclusion as a rehabilitation hospital. In December 1983, HCFA excluded SSM as a long-term care hospital. In mid–1984, in response to SSM's inquiry, the Intermediary advised "that since you met the criteria for long-term status [HCFA] went no further, as it was the quickest and easiest [exclusion] status."[2] SSM then renewed its request for a rehabilitation hospital certification, and HCFA advised in August 1984 that SSM "is recognized as a Rehabilitation Hospital," making this recertification retroactive to January 1, 1984.

This might have ended the regulatory episode but for an additional TEFRA twist. Hospitals excluded from PPS are reimbursed under the traditional reasonable cost method, but subject to TEFRA's rate-of-increase limits. In enacting TEFRA, however, Congress gave the Secretary authority to provide for exemptions and adjustments to the rate-of-increase limits for "events beyond the hospital's control or extraordinary circumstances" which distort the hospital's costs. 42 U.S.C. § 1395ww(b)(4)(A). Implementing that authority, the Secretary promulgated a regulation granting a limited TEFRA exemption to a "new hospital," defined as:

> [A] provider of hospital inpatient services that has operated as the type of hospital for which HCFA granted it approval to participate in the Medicare program, under present or previous ownership, or both, for less than three full years.

42 C.F.R. § 413.40(f)(1) (1986), formerly 42 C.F.R. § 405.463(f)(1) (1984). When the Intermediary computed SSM's reimbursements under TEFRA using a 1983 base year, SSM requested a hearing to determine whether it was entitled to a 1984 base year because it became a "new hospital" on January 1, 1984, the effective date of its HCFA certification as a rehabilitation hospital.

Following an evidentiary hearing, a divided Provider Reimbursement Review Board (the "PRRB"), *see* 42 U.S.C. § 1395oo(a), determined that SSM was a new hospital entitled to the 1984 base year. The PRRB majority reasoned that the plain language of 42 C.F.R. § 413.40(f)(1) focused solely on the type of certification—a hospital is new if it has been "the type of hospital for which HCFA granted it approval ... for less than three full years." Therefore, SSM became a new hospital when HCFA changed its certification in 1984. One PRRB member dissented. Emphasizing the purpose of the new hospital exemption, and the term "has operated" in § 413.40(f)(1), the dissenter argued that "prior [PRRB] cases and court cases [have] focused on the 'services rendered' rather than the type of 'certification.'"

The Intermediary, supported by HCFA's Bureau of Policy Development, appealed the PRRB decision to HCFA's Administrator. The Administrator, agreeing with the PRRB dissenter, construed the regulation as focusing on the provider's services rather than its HCFA certification. Applying that standard, the Administrator found that SSM was not a new hospital in 1984 because it had provided comprehensive rehabilitation services for more than three years prior to its certification as a rehabilitation hospital. The Administrator's decision is the final agency action. *See* 42 U.S.C. § 1395oo(f)(1). SSM appealed that decision to the district court,[3] which granted summary judgment in favor of the Secretary, concluding that the Administrator's decision is not arbitrary or capricious and is supported by substantial evidence.

---

2. SSM was granted the long-term care exclusion after the Intermediary verified that SSM's average patient stay was longer than 25 days. *See* 42 C.F.R. § 412.23(e) (1985). The criteria for exclusion as a rehabilitation hospital were more subjective and demanding. *See* 42 C.F.R. § 412.23(b) (1985); HCFA Provider Reimbursement Manual, Part 1, § 2803.2.

3. In fact, there were two agency final actions because the 1987 reimbursement year was the subject of a separate proceeding. However, the two actions were substantively identical, so this opinion for convenience will treat them as one.

## II.

■ **A. The Secretary's Interpretation Must Prevail.** SSM first argues that the Secretary's decision is contrary to the plain language of the applicable regulation, 42 C.F.R. § 413.40(f)(1). As SSM construes the regulation, its HCFA certification defines "the type of hospital for which HCFA granted it approval." When SSM was first certified as a rehabilitation hospital in 1984, it held that certification for less than three years and was therefore a new hospital for TEFRA exemption purposes. The Secretary counters this plain language argument with one of her own. The regulation requires that a provider must have *"operated* as the type of hospital for which HCFA granted it approval" for less than three years. Therefore, the Secretary argues, SSM was not entitled to the new hospital exemption because it had "operated" as a rehabilitation hospital since prior to 1981, even though it was certified as a long-term care hospital until 1984.

■ SSM and the Secretary each plausibly construe the regulation's ambiguous language. However, their conflicting interpretations do not compete on a level playing field, for "we must defer to the Secretary's interpretation [of a provider reimbursement regulation] unless an alternative reading is compelled by the regulation's plain language or by other indications of the Secretary's intent at the time of the regulation's promulgation." *Thomas Jefferson Univ. v. Shalala,* — U.S. —, —, 114 S.Ct. 2381, 2387, 129 L.Ed.2d 405 (1994); *see Abbott–Northwestern Hosp., Inc. v. Schweiker,* 698 F.2d 336, 340 (8th Cir.1983). If the Secretary "has given the text a reading that is linguistically possible and makes sense in light of the purposes of the exception," her interpretation must prevail. *Homemakers North Shore, Inc. v. Bowen,* 832 F.2d 408, 413 (7th Cir.1987).

The Secretary's interpretation of 42 C.F.R. § 413.40(f)(1) is both linguistically possible and consistent with the purposes underlying the TEFRA new hospital exemption. The statute gives the Secretary broad discretion to provide exemptions and adjustments to take into account "extraordinary circumstances" that distort cost trends. 42 U.S.C. § 1395ww(b)(4)(A). She promulgated this exemption because new hospitals "commonly have unusually high operating costs per case in the first year of operation [which] would not provide a good basis for applying the [TEFRA] ceiling." 47 Fed.Reg. 43282, 43288–89 (September 30, 1982). An existing hospital that receives a new HCFA certification with little or no accompanying change in operations should not incur the unusually high start-up costs of a new hospital. Thus, the Secretary's focus on the nature of a hospital's continuing services, rather than its HCFA certification, is true to the regulation's purpose.

On the other hand, SSM's proposed interpretation seems to create a TEFRA loophole. There was no need to certify providers as rehabilitation hospitals until that class was granted a statutory exclusion from PPS in 1983. *See* S.Rep. No. 98–23, 98th Cong., 1st Sess. 54, reprinted in 1983 U.S.C.C.A.N. 143, 193–194; 48 Fed.Reg. 39752, 39755–57 (Sept. 1, 1983) (discussing interim final rules). Presumably, therefore, many providers that effectively functioned as rehabilitation hospitals before 1984 had reason to seek that certification when PPS came into effect. SSM argues in effect that all those hospitals should be excluded from PPS *and* should also be entitled to the TEFRA new hospital exemption, *solely by reason of recertification,* a result plainly at odds with the purposes of both the TEFRA reforms and the new hospital exemption.

The Secretary's interpretation of the new hospital regulation is consistent with her treatment of this issue in other cases. In *Rotary Rehab. Hosp. v. Blue Cross & Blue Shield Ass'n,* PRRB No. 91–D86 at 5, [1992–1 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 39,658 (Sept. 27, 1991), an acute care hospital spun off its fifty-bed rehabilitation unit as an autonomous entity, which was then certified as a rehabilitation hospital. HCFA denied a TEFRA new hospital exemption, and the PRRB upheld that decision, concluding that, "even though there were several different providers over the years, they were offering the same services in the same building without interruption for almost twelve years." Similarly, in *Memorial Re-*

*hab. Hosp. v. Blue Cross & Blue Shield Ass'n,* PRRB No. 91–D82, [1992–1 Transfer Binder] Medicare & Medicaid Guide (CCH) ¶ 39,694 (Sept. 20, 1991), *aff'd sub nom. Memorial Rehab. Hosp. v. Sullivan,* 1992 WL 456736, Medicare & Medicaid Guide (CCH) ¶ 41,058 (C.D.Cal.1992), the rehabilitation unit of an acute care hospital became a free-standing entity, with increased staff and expanded rehabilitation services. The PRRB nonetheless concluded that certification as a rehabilitation hospital did not justify a TEFRA new hospital exemption.[4]

In upholding the agency decision in *Memorial,* the reviewing court deferred to the Secretary's interpretation of the regulation. *See* 1992 WL 456736, at *3 n. 8 (the change in certification "would not warrant 'new hospital' status"). Likewise, in upholding the denial of a new provider exemption in *Homemakers,* the Seventh Circuit deferred to the Secretary's interpretation of a regulation very much like the one at issue here. *See* 832 F.2d at 413–14. In these circumstances, we must defer to the Secretary's interpretation of 42 C.F.R. § 413.40(f)(1).

■ **B. What Is the "Official Interpretation"?** SSM next argues that the Secretary's interpretation of the regulation is arbitrary because it conflicts with her "official interpretation" contained in published comments explaining a later amendment to that regulation. The 1992 amendment added the requirement that, to be a new hospital, a provider must establish that it "[h]as not previously provided the type of hospital inpatient services which HCFA granted it approval to participate...." 57 Fed.Reg. 23618, 23686–87 (June 4, 1992), codified at 42 C.F.R. § 413.40(f)(1)(i)(B). In explaining the reasons for proposing this amendment, HCFA stated:

> the proposed change would mean that the new hospital exemption would not apply to hospitals that change the basis of their certification but do not experience a signif-

icant change in organizational structure or in the type of services provided.

57 Fed.Reg. at 23659–23660. SSM argues that this explanation was an agency admission that a provider that changed its certification status *prior to* the effective date of the 1992 amendment, such as SSM, qualified for the new hospital exemption. The Secretary rejects this contention, instead concluding that the 1992 amendment merely clarified the agency's prior policy of looking to the services provided by a hospital rather than its formal certification in applying the new hospital exemption.

■ SSM argues that the 1992 explanatory comments are the agency's "official interpretation," like the Sentencing Guidelines commentary at issue in *Stinson v. United States,* —— U.S. ——, 113 S.Ct. 1913, 123 L.Ed.2d 598 (1993). But SSM cites no authority for the proposition that an agency's explanation of a proposed amendment is the "official interpretation" of the prior regulation. In stating that the addition of a services requirement "changed" the regulation, the explanatory comments inaccurately overlooked the Secretary's decisions applying the prior regulation, such as *Rotary* and *Memorial.* An agency's contemporaneous interpretation of its own regulation is entitled to greater deference. *See Udall v. Tallman,* 380 U.S. 1, 16, 85 S.Ct. 792, 801, 13 L.Ed.2d 616 (1964). In this context, the decisions in *Rotary* and *Memorial* were contemporaneous interpretations. The explanatory comments were after-the-fact observations.[5]

The Administrator's decision in this case accurately described the 1992 amendment as a "clarification" of the agency's prior decisions construing the initial regulation. Whether the 1992 explanatory comments were an inartful attempt to clarify prior agency policy, or simply a mistaken view of the Secretary's interpretation of the prior regulation, these *post hoc* comments do not

---

4. The PRRB's decisions in *Rotary* and *Memorial* were final because the HCFA Administrator denied review, *see* 42 U.S.C. § 1395oo(f)(1). By contrast, when the PRRB reached a contrary decision in this case, the Administrator granted review and reversed. Thus, the Secretary acted consistently in all three cases.

5. The court in *Memorial* summarily rejected SSM's argument, noting that the "current loophole[s]" referred to in the explanatory comments did not "describe the identical situation as in this case." 1992 WL 456736, at *3 n. 9.

render invalid the Secretary's application of the prior regulation in this case.

■ **C. The Substantial Evidence Question.** Finally, SSM argues that the Secretary's denial of a new hospital exemption is not supported by substantial evidence—"such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S.Ct. 206, 216, 83 L.Ed. 126 (1938). After reviewing the record as a whole, we agree with the district court that substantial evidence supports the Secretary's decision.

A 1980 advertising brochure defined SSM's mission as "provid[ing] comprehensive medical rehabilitation and skilled nursing rehabilitation to an adult and geriatric population" and boasted that SSM was "the one freestanding rehabilitation facility in the St. Louis area." Beginning no later than 1981, SSM classified its entire facility as a specialty rehabilitation hospital in its annual license applications to the State of Missouri. The Intermediary's auditor found that in 1983 SSM met all of the Secretary's criteria for a rehabilitation hospital, and SSM was among the first hospitals in the country to be certified as a rehabilitation hospital in 1984. And in late 1984, when SSM sought HCFA approval to relocate its facilities, it stated:

> [SSM] has become identified in the region as a specialized provider of comprehensive medical rehabilitation services. In order to maintain the referral network that has evolved over the years, it is necessary to maintain [SSM's] identity and to provide assurance to those referrals that [SSM] would continue to operate as it had at its former location.

On this record, the Secretary was well within her discretion in concluding that SSM in 1984 did not face the prospect of low occupancy rates and substantial start-up costs typically incurred by a new hospital and therefore did

**6.** SSM further argues that use of the incorrect base year will result in lower Medicare reimbursement, thereby violating the prohibition on cost shifting. *See* 42 U.S.C. § 1395x(v)(1)(A)(i). This fact-intensive issue was not presented to the agency and should not be initially considered by

not warrant a TEFRA new hospital exemption.[6]

The judgment of the district court is affirmed.

a reviewing court. *See Unemployment Compensation Comm'n v. Aragon*, 329 U.S. 143, 155, 67 S.Ct. 245, 251, 91 L.Ed. 136 (1946). In any event, we have concluded that the Secretary correctly determined SSM's base year.