**P.I.A. MICHIGAN CITY INCOR-
PORATED,** *d/b/a* **Kingwood
Hospital, Appellant**

v.

**Tommy G. THOMPSON, Secretary of
the United States Department of
Health and Human Services, Appellee**

No. 00–5455.

United States Court of Appeals,
District of Columbia Circuit.

Argued Oct. 5, 2001.

Decided June 14, 2002.

---

Jonathan P. Neustadter argued the cause for appellant. With him on the briefs was Patric Hooper.

Marcus H. Christ, Jr., Attorney, U.S. Department of Health & Human Services, argued the cause for appellee. With him on the brief were David S. Cade, Acting General Counsel, Henry R. Goldberg, Deputy Associate General Counsel, David W. Ogden, Assistant Attorney General, U.S. Department of Justice, Wilma A. Lewis, U.S. Attorney at the time the brief was filed, and Anthony J. Steinmeyer, Attorney, U.S. Department of Justice.

Before: GINSBURG, Chief Judge; SENTELLE and GARLAND, Circuit Judges.

Opinion for the Court filed by Circuit Judge SENTELLE.

SENTELLE, Circuit Judge:

P.I.A. Michigan City, Inc., brought this action pursuant to 42 U.S.C. § 1395oo(f)(1) for review of the Secretary's decision in a Medicare reimbursement matter. The hospital contended that the Secretary erred in denying it an exemption from the Medicare payment limitations imposed under the Tax Equity and Fiscal Responsibility Act of 1982. The district court denied the motion of the hospital for summary judgment, granted the cross-motion for summary judgment of the Secretary, and dismissed the action. Because we agree with the district court that the Secretary's application of regulations was reasonable and the Secretary's decision was supported by the record, we affirm the grant of summary judgment in favor of the Secretary.

## I. Background

### A. Statutory and Regulatory Background

This case involves proper calculation of a hospital's compensation or reimbursement

under Part A of Medicare, the federally funded and administered health insurance program for the eligible elderly and disabled established by title XVIII of the Social Security Act and codified as amended at 42 U.S.C. §§ 1395–1395i-s (1994 & Supp.1999). The program can make direct payment to providers of inpatient hospital services, 42 U.S.C. § 1395d(a)(1), including psychiatric hospitals. *Id.* § 1395d(c). The statute describes hospitals eligible to participate, including psychiatric hospitals, 42 U.S.C. § 1395x(e)-(f), and permits a "distinct part" of an institution to qualify as a psychiatric hospital. *Id.* § 1395x(f). The statute also defines, and limits payment to, "reasonable costs." 42 U.S.C. §§ 1395x(v), 1395f(b)(1). The statutory distinction between a generic hospital ("general hospital" hereinafter) and a psychiatric or other special purpose hospital is material to the controversy before us because Congress has chosen different means to attempt to limit the rise in "reasonable costs" allowed for general hospitals than for specialty hospitals.

Congress enacted a limitation on the extent to which Medicare Part A hospital insurance could recognize an increase in a hospital's otherwise "reasonable costs" in the Tax Equity and Fiscal Responsibility Act of 1982, Pub.L. No. 97–248, § 101(a)(1) (codified at 42 U.S.C. § 1395ww(b)(1994 & Supp.1999)) ("TEFRA"). This approach allowed a percentage increase in reasonable costs each year. The percentage was specified in the statute; the base of costs to which the percentage applied, or "target amount," was a hospital-specific figure equal, for the hospital's first cost year under the statute, to its actual operating costs in the preceding cost year. Each year thereafter, the target amount for that hospital increased from its base year target amount by the percentage specified in the statute, even if the hospital's actual cost experience differed. The target amount used in the statutory formula for a

particular hospital for a particular subsequent year, in effect, was simply the product of that hospital's base year costs and the cumulative statutory percentages. The next year, Congress partially replaced the TEFRA limitation with a "prospective payment system" (PPS) applicable to general hospitals but not to psychiatric hospitals, distinct part psychiatric units, and other specialty hospitals and distinct part units. *See* 42 U.S.C. § 1395ww(d)(1)(A)-(B).

Congress directed the Secretary to provide exemption from the TEFRA limit for events beyond a hospital's control, and authorized such other relief from the TEFRA limit as the Secretary deemed appropriate. 42 U.S.C. § 1395ww(b)(4)(A). Pursuant to that discretionary authority, the Secretary promulgated the predecessor to 42 C.F.R. § 413.40 in 1982 and subsequently amended relevant portions of those regulations. The present controversy relates to these regulations and amendments as in effect for 1989–1990.

The Secretary's regulations provided a short term exemption for a "new hospital," which the regulations defined at the pertinent time as

> a provider of inpatient hospital services that has operated as the type of hospital for which HCFA granted it approval to participate in the Medicare program * * * for less than three full years.

42 C.F.R. § 413.40(f)(1)(i)(1989). ("HCFA" stands for Health Care Financing Administration, an agency under the Secretary. In the context of this opinion, distinctions between the Secretary and HCFA are immaterial and not observed.) The regulation tethered this paragraph (f) exemption period to admission of the hospital's first patient. *Id.* Paragraph (b) of the same regulation provided that the base year of a hospital or a distinct unit contin-

ued in effect "unless the hospital * * * qualifies as a new hospital." 42 C.F.R. § 413.40(b)(1)(1989) (rebase provision).

In 1992, the Secretary amended these paragraph (f) exemption and paragraph (b) rebase provisions. Changes to the Hospital Inpatient Prospective Payment Systems, 57 Fed.Reg. 39746 (Sept. 1, 1992). The paragraph (f) new hospital exemption provision was changed by shortening the three-year period and, more relevant to this controversy, by adding a second, "has provided" criterion to the existing "has operated" criterion:

> For purposes of this section, a new hospital is a provider of hospital inpatient services that—
>
> (A) Has operated as the type of hospital for which HCFA granted it approval to participate in the Medicare program, under present or previous ownership (or both), for less than 2 full years; and
>
> (B) Has provided the type of hospital inpatient services for which HCFA granted it approval to participate in the Medicare program, for less than 2 years.

42 C.F.R. § 413.40(f)(1992). The amendment also added the following sentence to the existing rebase provision:

> When the operational structure of a hospital or distinct unit changes (that is, a freestanding hospital becomes a distinct part unit or vice versa) the base period would be the first full 12–month cost reporting period effective with the revised Medicare certification classification.

42 C.F.R. § 413.40(b)(1) (1992). With subsequent minor changes in wording and format not material to this dispute, these provisions persist to the present. *See* 42 C.F.R. § 413.40 (2001).

## B. Factual Background

Plaintiff P.I.A. Michigan City, Inc., formerly known as Kingwood Hospital, of Michigan City, Indiana ("Kingwood" here-inafter), was an existing hospital that began participating in Medicare in 1968 as a general, short-term acute care hospital of 89 beds. By 1984, Kingwood converted 36 of its 89 beds to psychiatric use and Medicare certified Kingwood as a general acute-care hospital (subject to PPS payment regulation) with a distinct part psychiatric unit (subject to TEFRA limit payment regulation). By September 1985, Kingwood had expanded its psychiatric unit to 58 of its 89 beds. By May 31, 1989, Kingwood's psychiatric unit engulfed the general-hospital remainder of its 89 beds. Medicare recognized Kingwood as a freestanding psychiatric hospital effective June 1, 1989.

Accordingly, when the Secretary applied Kingwood's 1984 base-year TEFRA limit to its 1989–90 cost year to deny Kingwood full recovery of its costs, Kingwood applied timely for recognition of exempt "new hospital" status under paragraph (f) of 42 C.F.R. § 413.40, or at least a change in its TEFRA limit base year from 1984 to 1989–90 under § 413.40(b). The Provider Reimbursement Review Board rejected both requests. *See* 42 U.S.C. § 1395oo(a); Hearing Decision, *Kingwood Hospital,* No. 93–0054 (Provider Reimbursement Rev. Bd. Aug. 7, 1998), *reprinted in* Medicare & Medicaid Guide (CCH) ¶ 80,046 ("Board Decision" hereafter). As the Secretary declined to review the matter further, Kingwood's recourse was to the courts. 42 U.S.C. § 1395oo(f).

Kingwood filed a civil action in the district court seeking recognition of exempt new hospital status or alternatively a new base year. Both Kingwood and the Secretary moved for summary judgment. The district court denied Kingwood's motion, granted the Secretary's, and dismissed Kingwood's complaint. Order, *P.I.A. Michigan City, Inc. v. Shalala,* No. 98–2386 (D.D.C. Oct. 27, 2000). The district

court held that the Secretary's interpretations of the applicable regulations were reasonable and her decisions supported by substantial evidence.

## II. Analysis

Plaintiff's appeal presents the same alternative issues as were before the Secretary and the district court: First, whether Kingwood was entitled to a new TEFRA base cost reporting period beginning June 1, 1989 under 42 C.F.R. § 413.40(b)(1) as in effect June 1, 1989, taking into account any retroactive amendments thereto, if any, and evidence of the Secretary's interpretation thereof. Alternatively, whether Kingwood was entitled to a new-hospital exemption as of June 1, 1989 under 42 C.F.R. § 413.40(f)(1) as in effect June 1, 1989.

■ The standards for our review are well known. We review the district court's application of law de novo. As did the district court, we review the Secretary's interpretation and application of her regulations for reasonableness and the Secretary's findings for substantial support in the record. *See, e.g., Allentown Mack Sales & Service, Inc. v. NLRB,* 522 U.S. 359, 377, 118 S.Ct. 818, 139 L.Ed.2d 797 (1998).

## A. New Base Period

■ Kingwood argues that it is entitled to a more or less automatic change of its base period, under authority of § 413.40(b), from calendar year 1984 to the fiscal year June 1, 1989 through May 31, 1990 by reason of operational changes that led to its June 1, 1989 change in Medicare certification from a general hospital (subject to PPS) with a distinct-part psychiatric unit (subject to TEFRA) to an exclusively psychiatric, all-TEFRA hospital. According to Kingwood, granting such a change of base year following such a change in operations and certification was

the then-existing policy of the Secretary, as evidenced, first, by the Secretary's 1992 amendment to "clarify" paragraph (b)(1), *see* 57 Fed.Reg. 23618, 23660 (June 4, 1992), by adding the language quoted in Part I.A, *supra,* and second, by the Secretary's slightly earlier May 1992 letter decision allegedly granting just such a new base year to Dallas Rehabilitation Institute ("DRI").

The Review Board rejected Kingwood's argument. The Review Board began by searching the then-applicable regulations for language that supported an automatic change in base year, but it found none in effect for a cost year beginning when Kingwood's did. That decision evidences a reasonable interpretation by the Board, because the language of paragraph (b) as it existed in 1989, prior to the 1992 and later revisions, appears to refer only to change of base year in paragraph (f) "new hospital" circumstances. (Kingwood, of course, seeks that paragraph (f) exemption as well, but asserts in this argument that it has a right to paragraph (b) relief as of 1989 independently of whether it obtains paragraph (f) relief.) Nor does Kingwood appear fundamentally to disagree with the Review Board's conclusion on this particular point, as Kingwood's counsel conceded at oral argument that Kingwood did not rely on the plain language of the pre–1992 text.

The Review Board did note, further, that the Secretary had added a provision relating to changing base years in paragraph (j), 42 C.F.R. § 431.40(j) (now paragraph (*i*)), but that provision became effective too late to benefit Kingwood, a point Kingwood concedes. The Review Board noted, finally, Kingwood's argument that the 1992 amendment to paragraph (b) was intended to "clarify" the existing paragraph (b). The preamble language upon which Kingwood relies states:

Therefore, to preclude hospitals from qualifying for *a new hospital exemption based solely on such operational reorganizations*, we are proposing to revise § 413.40(f) to specify that a hospital will qualify as a new hospital *only* if it has not previously provided the *type of* hospital inpatient *services* for which HCFA granted it approval to participate in the Medicare program.

*However*, we also recognize that it would not be appropriate to subject *these types of hospitals* or distinct-part units to the [TEFRA Limit] that applied *before the hospital's reorganization.* Therefore, when the operational structure of hospital or distinct unit changes (*that is, a freestanding rehabilitation hospital becomes a distinct part or vice versa*), we are proposing to revise § 413.40(b)(1) *to clarify* that the base period would be the first full 12–month period effective with the *revised Medicare certification.*

57 Fed.Reg. at 23,660 (emphasis supplied by Kingwood). Kingwood argues that the Secretary's styling of the new language as "clarification" must mean that the effect of the amended regulation is the same as the prior language, and that therefore, the pre-amendment language, applicable to Kingwood, must reach the same result as would prevail after the amendment. The Review Board rejected that retroactivity argument on the grounds that the same preamble expressly provided that the regulations proposed had an effective date of October 1992. Accordingly, the Review Board dismissed Kingwood's view that the single use of the word "clarify" in the regulation preamble mandated retroactive application of that portion of the regulation, notwithstanding the effective date clause. This final conclusion is not unreasonable, particularly as the usage cited by Kingwood is in the context of an integrated six-paragraph discussion of the reasons for the third proposed change to the new

hospital exemption regulations, which Kingwood expressly argues is not retroactive. *See generally* 57 Fed.Reg. at 23,659–60. Finally, the Review Board observed that Kingwood was not entirely without relief under the then-effective regulations because the 1989 version of paragraph (h), 42 C.F.R. § 413.40(h)(1989) (codified as revised at 42 C.F.R. § 413.40(g)(2001)), provided a mechanism for adjustment to cost period data, including data in the base year itself, and that in fact Kingwood had received some relief under that provision. Yet again the Review Board's interpretation of the regulations is reasonable.

■ Unfortunately, the Review Board does not directly address the DRI letter decision in this analysis. The Review Board did discuss that letter as the last item in the immediately preceding section of its opinion, but only in discussing the paragraph (f)(1) exemption. The DRI letter decision in question is a three-paragraph response to an equally short inquiry by DRI's financial intermediary as to whether DRI might be eligible for a new base period because of its June 1, 1989 change in certification from an exclusively rehabilitation specialty hospital to a general short-term hospital with a distinct part rehabilitation unit. (A rehabilitation hospital or unit is subject to TEFRA limits, but a general short-term hospital is subject to the PPS regime.) The Director of the Office of Payment Policy, a sub-subdivision of HCFA, replied that it "would not be appropriate" to continue use of the TEFRA base period formerly established for the free-standing rehabilitation hospital for the rehabilitation unit because of an unspecified change in "methodology in determining Medicare's share of the costs of the different levels of patient care services," and authorized a base period of June 1, 1989 to May 31, 1990. Letter from Charles R. Booth, Director, Office of Payment Policy, Health Care Financing

Administration to Gene Brock, Senior Audit/Reimbursement Representative, Medicare Administration, Aetna Life Insurance Co. (May 1992), Administrative Record at 110. The short letter says little else.

As noted above, the Review Board did not deal with this letter at all in the portion of its opinion discussing this paragraph (b) issue. The Board's entire treatment of the DRI letter in the last two sentences of the preceding section, dismissing Kingwood's request for a paragraph (f) new hospital exemption, is curt and cryptic. The Board disregards the letter because "the facts in the Texas case can be distinguished from the facts in the current issue." Board Decision at 14. At oral argument, neither counsel for Kingwood or for the Secretary was able to provide content for this statement with support in the record, and we have found none in the record.

■ However, although it is incumbent on an agency to explain itself, it is also incumbent on an appellant complaining of inconsistency and capriciousness in the agency's explanation of its treatment to bring before the reviewing court sufficient particulars of how the appellant was situated, how the allegedly favored party was situated, and how such similarities as may exist dictate similar treatment and how such dissimilarities as may exist are irrelevant or outweighed. Kingwood on the sparse record before us "has failed to establish convincing inconsistencies between [the Secretary's] treatment of [Kingwood] and other facilities." *Lomak Petroleum, Inc. v. Federal Energy Regulatory Commission*, 206 F.3d 1193, 1198 (D.C.Cir. 2000). The DRI letter does not come close to filling this gap. The burden of proof lays the consequences on Kingwood. *See id.* In these circumstances, the treatment of the DRI letter is not a fatal flaw in the Review Board's otherwise adequate rejection of Kingwood's arguments on this issue.

## B. New Hospital Exemption

■ We now turn to Kingwood's alternative argument, that, if not entitled to a new base period, it must certainly be entitled to a new-hospital exemption. As noted earlier, a new hospital is one "that has operated as the type of hospital for which HCFA granted it approval to participate in the Medicare program * * * for less than three full years." 42 C.F.R. § 413.40(f)(1)(i) (1989). Kingwood argues that, by this language, the Secretary adopted a bright line test based on the date of HCFA approval. In Kingwood's view, the regulation is clear that an institution can not have *operated* as a psychiatric hospital until Medicare had recognized it as such. Kingwood supports this position by drawing to our attention the additional operational standards for records and staff that Medicare requires for its recognition, not just as a hospital, but as a *psychiatric* hospital. 42 U.S.C. § 1395x(f)(3)-(4), 42 C.F.R. §§ 482.60–482.62. Kingwood also relies upon the preamble to the original exemption from 1982 in which the Secretary offered as a reason for the exemption that new hospitals "commonly have unusually high operating costs per case in the first year of operation." 47 Fed.Reg. at 43,282, 43,288 (Sept. 30, 1982). Kingwood argues that an institution like itself which changes its nature incurs costs in meeting the additional requirements occasioned by the change so as to come within the Secretary's rationale of increased operating costs expressed in that preamble. Thus, Kingwood concludes that the Secretary's concern supports a bright-line test based on date of certification.

The Review Board did not accept this bright line test and peremptorily rejected exemption based on "recertification and

licensure change in and of itself." Board Decision at 14. The critical facts for the Review Board were instead that Kingwood "was primarily operating as a provider of psychiatric services for over five years prior to its recertification as a free standing psychiatric hospital" and "had used a majority of its beds (eighty-nine percent) for psychiatric services during the three years preceding its recertification on June 1, 1989." *Id.* The Review Board cited substantial record evidence for these findings, which Kingwood does not challenge. The only question is the legal relevance of these findings.

We hold that the Review Board's interpretation is reasonable and entitled to deference. Kingwood claims that its brightline reading of the regulation is "compell[ing]" and therefore bars deference, citing *Thomas Jefferson University v. Shalala*, 512 U.S. 504, 512, 114 S.Ct. 2381, 129 L.Ed.2d 405 (1994). We do not agree. Kingwood reminds us that neither the Review Board nor this Court may focus on the phrase "has operated" and ignore the balance of the regulatory sentence. *Cf. Lexecon Inc. v. Milberg Weiss Bershad Hynes & Lerach*, 523 U.S. 26, 35–36, 118 S.Ct. 956, 140 L.Ed.2d 62 (1998) (courts must construe a statute as a whole). Kingwood emphasizes that the regulation refers to a "new hospital" as "hav[ing] operated as the type of hospital *for which* HCFA granted it approval" for the requisite period. 42 C.F.R. § 413.40(f). Unquestionably, the "for which" phrase Kingwood emphasizes modifies the "type of hospital" phrase, and must be given effect. But the Review Board appears to have given it effect when it determined that Kingwood had been "primarily operating as a *provider of psychiatric services.*" Board Decision at 14 (emphasis added). The Review Board clearly first determined that "psychiatric hospital" is the "type of hospital for which HCFA granted [Kingwood] approval to participate in the Medi-

care program" and then inquired whether Kingwood had operated as such for less than three full years. 42 C.F.R. § 413.40(f)(1)(i) (1989). The interpretation of the regulation embodied in that inquiry takes into account the entire regulation.

Kingwood's contrary position that the entire regulatory sentence must be read to refer not simply to a period of operation as a psychiatric hospital, but to a period of operation as a HCFA-approved psychiatric hospital is not compelled by the language of the regulation. *See Thomas Jefferson University*, 512 U.S. at 512, 114 S.Ct. 2381. In fact, Kingwood's brightline interpretation arguably is the less reasonable reading because it effectively reads the verb "operated" out of the sentence. Kingwood might have had the necessarily "compell[ing]" reading if the Secretary had, in 1982, defined a new hospital as one that had been "*certified* as the type of hospital for which HCFA granted it approval to participate in the Medicare program for less than three years," but the verb the Secretary chose was *operated,* not *certified* or *approved.* A hospital can operate as a psychiatric hospital, that is, provide psychiatric services, without Medicare approval. No hospital is required, at least by Medicare itself, to meet Medicare criteria as such if the hospital does not seek payment from Medicare, *see* 42 U.S.C. §§ 1395f(a), 1395cc(b)(2)(B) (incorporating section 1395x definitions), 1395cc(i), and we are not aware of any other law or regulation, state or federal, that requires a facility to have Medicare approval solely as a requirement for providing psychiatric services to patients. Indeed, quite the contrary. 42 U.S.C. § 1395. A hospital could be licensed by its state to offer psychiatric services primarily or exclusively without seeking Medicare certification, and still be a psychiatric hospital.

Kingwood assumes that the term *psychiatric hospital* is a term of Medicare art that necessarily entails satisfaction of all the Medicare criteria, so that there is no meaningful distinction in this statutory and regulatory environment between the terms *psychiatric hospital* and *HCFA-approved psychiatric hospital,* making *psychiatric hospital* necessarily imply HCFA approval. *See* 42 U.S.C. § 1395x(f) (defining psychiatric hospital). Fundamentally, this is the same argument raised in *Memorial Rehabilitation Hospital of Santa Barbara v. Secretary of Health and Human Services,* 65 F.3d 134, 137 & n. 3 (9th Cir. 1995), with respect to the expression *type of provider* in an earlier version of this regulation. There, the institution claiming a new-hospital exemption was a rehabilitation hospital that had, under prior ownership, been only a distinct-part unit of another hospital and thus did not meet the statutory definition of *provider,* including the statutory definition of a *hospital* as a separately licensed entity. Thus, argued the institution, the Secretary was bound by these definitions and the institution clearly was a new provider because it never previously had met the definition of provider at all. The court rejected that argument on the grounds that the Secretary's interpretation need only be reasonable in light of the wording and purpose of the regulation, and the Secretary's generic interpretation of *provider* satisfied that test because the plaintiff's predecessor had offered and been certified for the same services. *See id.*

For substantially the same reasons, the Secretary's implicit interpretation, that the regulation in its 1989 form does not use the term *hospital* in the phrase *type of hospital* in the technical sense of the statutory definition, is reasonable. The essential fact distinguishing the Medicare definition of a psychiatric hospital from any other type of hospital is the type of services the institution primarily provides.

The statute defines "hospital" for relevant purposes as an institution which

(1) is primarily engaged in providing, by or under the supervision of physicians, to inpatients (A) diagnostic services and therapeutic services for medical diagnosis, treatment, and care of injured, disabled, or sick persons, or (B) rehabilitation services for the rehabilitation of injured, disabled, or sick persons;

(2) maintains clinical records on all patients;

(3) has bylaws in effect with respect to its staff of physicians;

(4) has a requirement that every patient with respect to whom payment may be made under this subchapter must be under the care of a physician;

(5) provides 24-hour nursing service rendered or supervised by a registered professional nurse, and has a licensed practical nurse or registered professional nurse on duty at all times; except that until January 1, 1979, the Secretary is authorized to waive the requirement of this paragraph for any one-year period with respect to any institution, insofar as such requirement relates to the provision of twenty-four-hour nursing service rendered or supervised by a registered professional nurse (except that in any event a registered professional nurse must be present on the premises to render or supervise the nursing service provided, during at least the regular daytime shift), where immediately preceding such one-year period he finds that— . . . .

42 U.S.C. § 1395x(e)(1). The same statute defines "psychiatric hospital" as

an institution which—

(1) is primarily engaged in providing, by or under the supervision of a physician, psychiatric services for the diagno-

sis and treatment of mentally ill persons;

(2) satisfies the requirements of paragraphs (3) through (9) of subsection (e) of this section;

(3) maintains clinical records on all patients and maintains such records as the Secretary finds to be necessary to determine the degree and intensity of the treatment provided to individuals entitled to hospital insurance benefits under part A of this subchapter; and

(4) meets such staffing requirements as the Secretary finds necessary for the institution to carry out an active program of treatment for individuals who are furnished services in the institution.

42 U.S.C. § 1395x(f)(1). Other than the difference in services provided, the only differences in definitions address requirements of clinical records and staffing, which do not go to the *type* of provider in the direct manner that the nature of services provided does. Accordingly, as did the Ninth Circuit, we hold that the *"type for which"* phrase in the regulation does not compel technical Medicare usage rather than customary, everyday usage.

Kingwood has relied on not just the plain language of the 1989 regulation, but the light shed on that language by both the 1992 amendment of the regulation and the accompanying preamble. Kingwood points to language in the preamble to the 1992 Proposed Rule that characterizes this addition as a substantive change intended to prevent results that had occurred under the 1989 regulations. *See* Proposed Rule, Changes to the Hospital Inpatient Prospective Payment Systems, 57 Fed.Reg. at 23,618, 23,659–60 (June 4, 1992). In particular, Kingwood relies on the concluding six-paragraph passage at the end of the preamble discussion of changes to the new hospital, which states, in relevant part:

> Our third proposed change in the new hospital exemption concerns the issue of whether a participating facility that reorganizes and/or changes the basis of its participation in the Medicare program is a new hospital. . . . Under our current regulations, [a described distinct part unit that became a stand alone] rehabilitation hospital would meet the criteria for a new hospital and, thus, could qualify for a new hospital exemption.
>
> Another example involved a rehabilitation hospital that added an acute care distinct-part unit [that eventually became the hospital, with the former rehabilitation hospital a distinct-part unit thereof]. Again, under the current regulations, the distinct-part unit would qualify for an exemption because the hospital technically meets the criteria for a new hospital.
>
> In both examples, the former distinct-part units qualified for a new hospital exemption because they were in existence for less than 3 years as the type of hospital for which they were approved to participate in the Medicare program. However, in a broader sense, these hospitals were not new. . . . Therefore, to preclude hospitals from qualifying for a new hospital exemption based solely on such operational reorganizations, we are proposing to revise § 413.40(f). . . .
>
> . . .
>
> We note that the proposed change would mean that the new hospital exemption would not apply to hospitals that change the basis of their certification but do not experience a significant change in organizational structure or in the type of services provided. . . . Under current policy, the exemption as a new hospital would begin with the first date . . . for which the hospital is certified as a [PPS-exempt hospital after having been under PPS]. Under the revised policy, the exemption would begin [when the hospital began offering

relevant services], whether or not the certification is effective for that period.

... The proposed policy would be effective for Medicare certifications occurring on or after October 1, 1992.

*Id.*

This preamble language, Kingwood submits, is more than simply a retrospective interpretation of the prior regulation, as another provider argued (unsuccessfully) in *SSM Rehabilitation Institute v. Shalala*, 68 F.3d 266, 270 (8th Cir.1995), but the very reason given by the Secretary for the need to change that regulation by amendment to end the consequences of that interpretation. Thus the weight accorded the 1992 preamble should not be the slight weight accorded a mere after-the-fact commentary, but instead the full weight due the Secretary's contemporaneous interpretation of his 1992 amendment as necessary to bar future exemptions similar to some actually obtained under the pre-amendment language.

The difficulty we have in accepting this argument is that Kingwood has not in fact established that it is situated similarly to the unidentified entities discussed in the 1992 preamble. It is true that Kingwood's psychiatric services were formerly a distinct-part unit of the hospital, *cf.* 57 Fed. Reg. at 23,659, but the present Kingwood hospital is not one that "eventually split off" from its parent hospital, as did the unnamed institution described in the preamble. In fact, that language in the preamble more accurately describes the facts in *Memorial Rehabilitation Hospital* than the facts here, and that was a case in which the Secretary clearly did *not* grant the exemption. 65 F.3d at 135–36, 139. Likewise, the preamble refers to an acute care hospital that added a distinct part rehabilitation unit that eventually expanded to become the hospital, with the former hospital now a subordinated acute-care unit. *See* 57 Fed.Reg. at 23,659. Again,

this does not precisely describe Kingwood's circumstances. Finally, we note the absence of meaningful time references in either of the Secretary's two preamble descriptions, or quantified comparisons of the proportion of all services provided by the hospitals and distinct part units, whereas the Review Board made unchallenged findings that Kingwood had been engaged "primarily" in providing psychiatric services for more than three years prior to its HCFA approval as an exclusively psychiatric hospital. As there is no basis for comparison of Kingwood's situation with the anonymous, stick-figure entities sketched in the 1992 regulation preamble, and as the burden of fleshing out the alleged inconsistencies of treatment falls on Kingwood, *Lomak Petroleum*, 206 F.3d at 1198, Kingwood gains no ground from its reliance on the 1992 preamble. To the extent that the 1992 preamble may have characterized the new regulation as a change in policy that would be relevant to Kingwood and those similarly situated, that characterization is outweighed by earlier and more specific indications of the Secretary's intent. *See SSM Rehabilitation*, 68 F.3d at 270.

Extending its argument based on the 1992 amendment, Kingwood insists that the Review Board improperly applied the 1992 amendment itself to Kingwood retroactively. Kingwood was certified as a psychiatric hospital in 1989, and by its terms the 1992 amendment applies only to "Medicare certifications occurring on or after October 1, 1992." 57 Fed.Reg. at 23,660. The 1992 amendment added to the existing requirement that the provider must have "operated as the *type of hospital* for which HCFA granted it approval to participate in the Medicare program" for less than a specified period a new, second requirement that the provider have "provided the *type of hospital inpatient services* for which HCFA granted it approval

... for less than two years." 42 C.F.R. § 413.40(f)(1992) (emphasis added). Kingwood asserts that the Review Board disqualified Kingwood simply because Kingwood had provided psychiatric services for some time, thereby applying, before its 1992 effective date, the new "type of services" element of the 1992 test. Kingwood is mistaken in its premise that the new element is necessary to explain the Review Board's decision. It is true that the new "type of services" element does not specify the level of services the hospital must have offered for more than two years in order to bar it from exemption, and that that bar could be set quite low. In the case before us, however, the Review Board's decision was not based simply on the fact that Kingwood had previously provided psychiatric services. Instead, the Review Board's decision was based on well-supported factual determinations that Kingwood had been "primarily operating" as a provider of psychiatric services and not "primarily providing acute care inpatient services" during the look-back period. This emphasis on Kingwood's "primary" level of activity clearly relates to the pre–1992 "type of hospital" test and the statutory definition of a psychiatric hospital. *See* Board Decision at 14; *cf.* 42 U.S.C. § 1395x(e)(1), (f)(1). Accordingly, the second test, in which *any* level of services might be disqualifying, clearly was not applied by the Review Board to Kingwood, retroactively or otherwise, and this argument fails as well.

### III. Conclusion

The district court made no error in determining that the decision of the Review Board, as the decision of the Secretary, satisfied the standards of 5 U.S.C. § 706. The Secretary has articulated reasonable interpretations of 42 C.F.R. §§ 413.40(b) and (f) as in effect at the relevant time, and Kingwood Hospital has failed to establish a compelling alternative interpretation.

The judgment of the district court is affirmed.